# EXHIBIT B

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

IPCO, LLC dba INTUSIQ, LLC, a Georgia limited liability company;
SIPCO, LLC, a Georgia limited liability company, and DOES 1 through
25, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

EDWIN B. BROWNRIGG, an individual; COMMUNIQUE
WIRELESS, LLC, a California limited liability company

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* Sacramento Superior Court | CASE NUMBER: *(Número del Caso):* 34·2012·00136709 |
|---|---|

720 9th Street, Sacramento, CA 95814
Gordon D. Schaber Sacramento County Courthouse

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Justin H. Sanders/Sanders Roberts LLP, 355 S. Grand Ave., #2450, Los Angeles, CA 90071; (213) 943-1314

| DATE: JAN 2 3 2013 *(Fecha)* | Clerk, by *(Secretario)* E. MEDINA | , Deputy *(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒☒ on behalf of *(specify):*  **SIPCO, LLC**

under: ☒☒ CCP 416.10 (corporation)  ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

Filed by Fax

CM-010

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>JUSTIN H. SANDERS (SBN 211488)<br>SANDERS ROBERTS LLP<br>355 South Grand Avenue, Suite 2450<br>Los Angeles, California 90071<br>TELEPHONE NO.: (213) 943-1314      FAX NO.: (213) 234-4581<br>ATTORNEY FOR *(Name):* CommUnique LLC; Edwin Brownrigg | FOR COURT USE ONLY<br><br>**FILED**<br>Superior Court Of California,<br>Sacramento<br>12/12/2012<br>emedina<br>By _____ , Deputy<br>Case Number:<br>**34-2012-00136754** |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SACRAMENTO
STREET ADDRESS: 720 9th Street
MAILING ADDRESS:
CITY AND ZIP CODE: Sacramento, CA 95814
BRANCH NAME: Gordon D. Schaber Sacramento County Courthouse

CASE NAME:
Brownrigg v. IPCO, LLC dba INTUSIQ, LLC, etc., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [✓] Unlimited<br>(Amount demanded exceeds $25,000) | [ ] Limited<br>(Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: | |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| [ ] Auto (22)<br>[ ] Uninsured motorist (46) | [ ] Breach of contract/warranty (06)<br>[ ] Rule 3.740 collections (09)<br>[ ] Other collections (09)<br>[ ] Insurance coverage (18)<br>[ ] Other contract (37) | [ ] Antitrust/Trade regulation (03)<br>[ ] Construction defect (10)<br>[ ] Mass tort (40)<br>[ ] Securities litigation (28)<br>[ ] Environmental/Toxic tort (30) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**<br>[ ] Asbestos (04)<br>[ ] Product liability (24)<br>[ ] Medical malpractice (45)<br>[ ] Other PI/PD/WD (23) | **Real Property**<br>[ ] Eminent domain/Inverse condemnation (14)<br>[ ] Wrongful eviction (33)<br>[ ] Other real property (26) | [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)<br>**Enforcement of Judgment**<br>[ ] Enforcement of judgment (20) |
| **Non-PI/PD/WD (Other) Tort**<br>[ ] Business tort/unfair business practice (07)<br>[ ] Civil rights (08)<br>[ ] Defamation (13)<br>[✓] Fraud (16)<br>[ ] Intellectual property (19)<br>[ ] Professional negligence (25)<br>[ ] Other non-PI/PD/WD tort (35) | **Unlawful Detainer**<br>[ ] Commercial (31)<br>[ ] Residential (32)<br>[ ] Drugs (38)<br>**Judicial Review**<br>[ ] Asset forfeiture (05)<br>[ ] Petition re: arbitration award (11)<br>[ ] Writ of mandate (02) | **Miscellaneous Civil Complaint**<br>[ ] RICO (27)<br>[ ] Other complaint *(not specified above)* (42)<br>**Miscellaneous Civil Petition**<br>[ ] Partnership and corporate governance (21)<br>[ ] Other petition *(not specified above)* (43) |
| **Employment**<br>[ ] Wrongful termination (36)<br>[ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is  [✓] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties      d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve      e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence      f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a.[✓] monetary   b.[✓] nonmonetary; declaratory or injunctive relief   c.[ ] punitive
4. Number of causes of action *(specify):*  Fraud In The Inducement; Breach Of Fiduciary Duty—Against Ipco Defendants; Rescission Of 2010 Fee Payment Agreement; Breach Of Contract; Conversion; Accounting
5. This case [ ] is  [✓] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. *(You may use form CM-015.)*

Date: December 11, 2012
Justin H. Sanders
_____        ▶        _____
(TYPE OR PRINT NAME)                                   (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | CIVIL CASE COVER SHEET | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std 3.10<br>www.courtinfo.ca.gov |

*Filed by Fax*

| | |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO<br><br>STREET ADDRESS: 720 Ninth STREET<br><br>MAILING ADDRESS: 720 Ninth STREET<br><br>CITY AND ZIPCODE: Sacramento, CA 95814-1311<br><br>BRANCH NAME:   Gordon D Schaber Courthouse<br><br>PHONE NUMBER:   (916) 874-5522 | FOR COURT USE ONLY |

| | |
|---|---|
| SHORT TITLE:     Brownrigg vs. Communique Wireless LLC | |

| | |
|---|---|
| **NOTICE OF CASE MANAGEMENT CONFERENCE**<br>**AND ORDER TO APPEAR** | CASE NUMBER:<br><br>34-2012-00136764-CU-FR-GDS |

**Hearing Date**

The above entitled action has been set for a case management conference at 08:30 AM on 06/13/2013 in Department  36  in accordance with California Rules of Court 212.  You must be familiar with the case and fully prepared to participate effectively in the case management conference.

**Case Management Statement**

All parties must file and serve a case management statement at least 15 calendar days before the case management conference. Parties are encouraged to file a single joint case management statement.

**Minimum Requirements**
Prior to the filing of the case management statement, the parties should have done the following:
 -Served all parties named in the complaint within 60 days after the summons has been issued
 -Ensured that all defendants and cross-defendants have answered, been dismissed, or had their defaults entered
 -Met and conferred with all parties as required by CRC 212 (f) to discuss and resolve issues set forth therein.

**Tentative Ruling**
Following its review of the case management statement(s), the court may determine that a case management conference is not necessary.
To determine whether an appearance is required, the parties must check the court's tentative rulings after 2:00 p.m. on the Court day before the Thursday calendar by accessing the court's internet website at www.saccourt.ca.gov

**Case Management Orders**
At the case management conference, the court will consider whether the case should be ordered to judicial arbitration or referred to other forms of Alternative Dispute Resolution. Whether or not a case management conference is held, the court will issue a case management order shortly after the scheduled conference date.

**Service of Case Management Notice**
Unless otherwise ordered by the court, plaintiff shall serve a copy of this notice on any party to the complaint appearing after the court issued this notice. The cross-complainant shall have the same obligation with respect to the cross-complaint.

**Certification Filed in Lieu of Case Management Statement**
If parties in the action file a certification on a form provided by the court at least 15 calendar days prior to the date of the case management conference that the case is short cause (five hours or less of trial time), that the pleading stage is complete and that the case will be ready for trial within 60 days, the case will be exempted from any further case management requirements and will be set for trial within 60-120 days. The certification shall be filed in lieu of a case management statement.

---

**NOTICE OF CASE MANAGEMENT CONFERENCE AND ORDER TO APPEAR**          Page: 1

**Compliance**
Failure to comply with this notice or to appear at the case management conference may result in the imposition of sanctions (including dismissal of the case, striking of the answer, or payment of money).

**Continuances**
Case management conference will not be continued except on a showing of good cause. If your case management conference is continued on motion or by the court on its own motion all parties shall file and serve a new case management statement at least 15 calendar days before the continued case management conference.

Dated: 01/23/2013

Gerrit W. Wood, Judge of the Superior Court

JUSTIN H. SANDERS (SBN 211488)
jsanders@sandersroberts.com
**SANDERS ROBERTS LLP**
355 South Grand Avenue, Suite 2450
Los Angeles, California 90071
Telephone:    213-943-1314
Facsimile:    213-234-4581

Attorneys for Plaintiff
**COMMUNIQUE LLC, a California Limited Liability
Corporation; and EDWIN BROWNRIGG, an individual**

**FILED**
Superior Court Of California,
Sacramento

12/12/2012

emedina

By _____ , Deputy

Case Number:
**34-2012-00136764**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SACRAMENTO

EDWIN B. BROWNRIGG, an individual;
COMMUNIQUE WIRELESS, LLC, a
California limited liability company,

         Plaintiff,

vs.

IPCO, LLC dba INTUSIQ, LLC, a Georgia
limited liability company; SIPCO, LLC, a
Georgia limited liability company, and DOES
1 through 25, inclusive,

         Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.:

**COMPLAINT**

DEPARTMENT
ASSIGNMENTS

Case Management 36
Law and Motion    54
Minors Compromise 45

Plaintiffs Edwin B. Brownrigg ("Brownrigg") and CommUnique Wireless, LLC
("CommUnique") allege as follows:

### JURISDICTION AND VENUE

    1.    This Court has jurisdiction over this action because all of the parties reside in, are
incorporated in, have their main place of business in, or conduct business in the State of
California and a substantial portion of the acts, omissions, events, and transactions alleged herein
occurred within the State of California.

### PARTIES

    2.    Plaintiff Edwin B. Brownrigg is and was an individual whose residence is in the
County of Placer.

- 1 -
COMPLAINT

1  JUSTIN H. SANDERS (SBN 211488)
   jsanders@sandersroberts.com
2  **SANDERS ROBERTS LLP**
   355 South Grand Avenue, Suite 2450
3  Los Angeles, California 90071
   Telephone:    213-943-1314
4  Facsimile:    213-234-4581

5  Attorneys for Plaintiff
   **COMMUNIQUE LLC, a California Limited Liability
6  Corporation; and EDWIN BROWNRIGG, an individual**

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                     FOR THE COUNTY OF SACRAMENTO

10

11  EDWIN B. BROWNRIGG, an individual;        )   Case No.:
    COMMUNIQUE WIRELESS, LLC,                 )
12  a California limited liability company,   )   **COMPLAINT**
                                              )
13              Plaintiff,                     )
                                              )
14       vs.                                   )
                                              )
15  IPCO, LLC dba INTUSIQ, LLC, a Georgia     )
    limited liability company; SIPCO, LLC, a  )
16  Georgia limited liability company, and DOES )
    1 through 25, inclusive,                  )
17                                             )
                                              )
18              Defendants.                    )
                                              )

FILED
Superior Court Of California,
Sacramento
12/12/2012
emedina
By _____ , Deputy
Case Number:
**34-2012-00136764**

Filed by Fax

DEPARTMENT
ASSIGNMENTS

Case Management  36
Law and Motion    54
Minors Compromise 45

19       Plaintiffs Edwin B. Brownrigg ("Brownrigg") and CommUnique Wireless, LLC

20  ("CommUnique") allege as follows:

21                     <u>JURISDICTION AND VENUE</u>

22       1.      This Court has jurisdiction over this action because all of the parties reside in, are

23  incorporated in, have their main place of business in, or conduct business in the State of

24  California and a substantial portion of the acts, omissions, events, and transactions alleged herein

25  occurred within the State of California.

26                            <u>PARTIES</u>

27       2.      Plaintiff Edwin B. Brownrigg is and was an individual whose residence is in the

28  County of Placer.

                              - 1 -
                            COMPLAINT

3.      Plaintiff CommUnique Wireless, LLC is a California limited liability corporation conducting business in the above-captioned judicial district.

4.      Plaintiffs are informed and believe, and thereupon allege, that defendant IPCO, LLC dba INTUSIQ, LLC ("IPCO") is a limited liability company duly organized under the laws of the State of Georgia with its principal place of business in Atlanta, Georgia, and does business in the State of California.

5.      Plaintiffs are informed and believe, and thereupon allege, that defendant SIPCO, LLC is a limited liability company duly organized under the laws of the State of Georgia with its principal place of business in Atlanta, Georgia, and does business in the State of California

6.      The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants named herein as Does 1 through 25, inclusive, are unknown to Plaintiffs at this time; Plaintiffs will seek leave of court to amend this complaint when the same becomes fully ascertained.

7.      At all times relevant hereto, each of the defendants sued herein, including Does 1 through 25, acted in concert with, and/or was the agent, partner, affiliate, joint-venturer, co-conspirator, aider and abettor, servant, representative, or employee of each of the other defendants and was at all times acting with and within the course and scope of their authority as such, each with the permission and consent of his, her, or its co-defendants.

## FACTUAL BACKGROUND

8.      Plaintiff Edwin Brownrigg is the inventor of software relating to wireless networking systems and methods.

9.      The technology that allows electronic devices to exchange data wirelessly (i.e., without the need for wires, cables, or any physical links) is known as Wi-Fi. Devices enabled to receive and transmit data wirelessly (such as personal computers and smartphones) require access points to Wi-Fi before they are able to exchange data wirelessly. The access points (also known as "hotspots") have very limited ranges. The hotspots are tied to physical machinery, such as servers that allow wireless transmission in a limited area such as a home or cell phone towers. If a user is not within the effective radius of a wireless server or is unable to get cell

- 2 -
COMPLAINT

SANDERS
ROBERTS
355 S. GRAND AVENUE
SUITE 2450
LOS ANGELES, CA 90071

1    reception, then the user's Wi-Fi enabled devices will not be able to exchange data wirelessly.

2        10.    Around 1998, Plaintiff Brownrigg developed software that utilized radio

3    communications to create additional hotspots or boost the strength of already existing hotspots.

4    This software had useful applications for users that may be temporarily hidden from direct view

5    of a Wi-Fi server, or for users who were in an area with little no cellular reception. In addition to

6    providing or strengthening Wi-Fi coverage, the system developed by Plaintiff Brownrigg could

7    also be used to strengthen the robustness of cellular networks.

8        11.    Plaintiff Brownrigg eventually received three patents for his software, U.S.

9    Patents 6,044,062 ("'062 Patent'"), 6,249,516 ("'516 Patent") (collectively "Patents"), and

10   7,054,271. The main assets of Plaintiff CommUnique had been the Patents.

11       12.    Defendant IPCO currently describes itself as "an inventor-based company

12   established to share wireless mesh technology based on the work of inventors T. David Petite

13   and Dr. Edwin Brownrigg with others." Attached as Exhibit A is a true and correct copy of a

14   printout from IPCO's website, www.intusiq.com.

15       13.    When Brownrigg originally developed his software, the use of Wi-Fi was not as

16   commonplace as it is today. One of the few industries that actively sought to use Wi-Fi in the

17   late 1990s and early 2000s was the automatic meter reading industry, which had been seeking a

18   way to move away from human meter readers who would go out in the field and record meter

19   usage to a system where the information from the meters would be automatically and directly

20   transmitted to a utility company. However, Plaintiffs Brownrigg and CommUnique did not have

21   extensive experience in marketing and commercializing patents in the automatic meter reading

22   industry.

23       14.    In the early 2000s, Defendant IPCO had a significant stake in the meter reading

24   industry. Plaintiffs are informed and believe, and thereon allege, that Defendant IPCO and its

25   founder, David Petite, owned approximately fifty patents relating to automatic meter reading.

26   However, the patents that Defendant IPCO did not hold at the time were those relating to the

27   direct wireless transmission of data from the meters to the utility company.

28       15.    In or around November 2004, Petite contacted Plaintiff Brownrigg to inquire

SANDERS
ROBERTS
355 S. GRAND AVENUE
SUITE 2450
LOS ANGELES, CA 90071

1  whether he would be interested in partnering with Defendant IPCO to commercialize and

2  economically exploit the Patents. Petite explained Defendant IPCO's strength in the automatic

3  meter reading industry, and due to its position in the industry, that IPCO could develop and

4  commercialize the Patents on behalf of Plaintiffs.

5      16.    As a result of the subsequent communications between Plaintiff Brownrigg and

6  Defendant IPCO, and based upon Defendant IPCO's relative strength and greater experience in

7  the automatic meter reading industry, in December 2004, Plaintiff CommUnique entered into

8  two agreements whereby Plaintiff CommUnique assigned the Patents (as well as the full control

9  to prosecute any continuation reissue or re-examined application of the Patents) to Defendant

10  IPCO in return for Defendant IPCO's efforts to commercialize the Patents and IPCO's payment

11  $10 million. Rather than make its payment through one lump sum or periodic payments of a set

12  amount, Defendant IPCO was to pay fifty percent of the net revenue it received from its

13  licensing and assignment of the Patents during each business quarter no later than sixty days

14  after the end of the business quarter. Defendant IPCO also agreed to provide an accounting each

15  quarter of its net revenue, as well as keeping records showing revenue and costs with regards to

16  marketing, licensing, and compensation it received from the Patents. To put it simply, Plaintiff

17  CommUnique and Defendant IPCO agreed to share profits, with Defendant IPCO obligated to

18  provide Plaintiff CommUnique with an accounting to insure the fidelity of Defendant IPCO's

19  duty to share profits.

20      17.    IPCO further agreed that it would assign the Patents back to Plaintiffs if it failed

21  to meet a set of commercialization standards. The commercialization provisions set minimum

22  payments that IPCO was to make to CommUnique by certain set milestones, as well as

23  established conditions that would be construed as failures to commercialize the Patents.   The

24  two agreements were memorialized in a written agreement effective December 6, 2004

25  (hereinafter "2004 Patent Agreement.)  A true and correct copy of the 2004 Patent Agreement is

26  attached hereto as Exhibit B.

27      18.    Between 2006 through 2009, two former shareholders of Plaintiff CommUnique

28  who had held management positions, Thomas Wilson and William Karr, began informally

SANDERS
ROBERTS
355 S. GRAND AVENUE
SUITE 2450
LOS ANGELES, CA 90071

1    seeking an accounting from Plaintiff CommUnique and Defendant IPCO arising out a prior

2    settlement between Wilson, Karr and Plaintiffs CommUnique and Brownrigg.

3        19.     Also during this period, the use of Wi-Fi increased drastically from specialized

4    niche industry applications to everyday common usage (ranging from wirelessly integrating

5    home entertainment and computer systems to smartphone applications), greatly increasing the

6    commercial potential of the Patents.

7        20.     In 2006, an association of organizations also seeking to commercialize Wi-Fi,

8    ZigBee, challenged the validity of the Patents by initiating a formal re-examination process

9    against the Patents in the U.S. Patent and Trademark Office ("USPTO").

10        21.     Sometime around April 2008, Oliver Lee, the CEO and attorney for Defendant

11    IPCO, represented to Plaintiff Brownrigg that the re-examination placed the validity of the

12    Patents in limbo, and for all practical intents and purposes, halted the ability of Defendants IPCO

13    and SIPCO (hereinafter collectively referred to as "IPCO Defendants") to commercialize the

14    Patents.

15        22.     Due to the re-examination and Lee's representation that the IPCO Defendants

16    could not commercialize the Patents pending re-examination, Plaintiff CommUnique agreed to

17    replace the 2004 Patent Agreement with a letter agreement dated April 11, 2008, the terms of

18    which were confirmed and further clarified by a letter agreement dated December 12, 2008

19    (collectively hereinafter "2008 Letter Agreement"). A true and correct copy of the 2008 Letter

20    Agreement is attached hereto as Exhibit C.

21        23.     Pursuant to the terms of the 2008 Letter Agreement, Plaintiff CommUnique and

22    Defendant IPCO modified IPCO's payment obligations. In lieu of the profit-sharing terms,

23    Plaintiff CommUnique agreed to allow Defendant IPCO's purchase the Patents for $2,500,000

24    payable over a designated period with the final payment due on or before October 9, 2009. The

25    $2,500,000 payment was subject to a potential setoff because the '062 Patent was still under re-

26    examination. The setoff would have been a pro rata adjustment of the claims the USPTO would

27    allow on the '062 Patent (e.g., if the USPTO allowed 50% of the '062 claims, then CommUnique

28    would be allowed 50% of the $1,250,000 due for the rights to the '062 Patent).

**SANDERS**
**ROBERTS**
355 S. GRAND AVENUE
SUITE 2450
LOS ANGELES, CA 90071

24.     CommUnique also agreed to cancel a personal guaranty signed by David Petite, IPCO's president and founder, in the amount of $10,000,000 in favor of CommUnique. CommUnique had held the personal guarantee as security for the amounts due under the 2004 Patent Agreement.

25.     As to all other terms from the 2004 Patent Agreement, the 2008 Letter Agreement only voided those terms that conflicted with the 2008 Letter Agreement.

26.     In or around August of 2008, the USPTO upheld the validity of the '516 Patent.

27.     On or about March 10, 2009, Wilson and Karr filed a lawsuit against Brownrigg, Donna Brownrigg, CommUnique, and IPCO in the Superior Court of California, County of Alameda. ("Wilson-Karr Lawsuit".)  Among the issues in the lawsuit were whether Brownrigg breached a prior settlement agreement with Wilson and Karr by failing to account for and provide funds generated by the Patents, and whether Defendant IPCO was actively assisting CommUnique in purportedly breaching the prior settlement agreement.

28.     The Plaintiffs and the IPCO Defendants eventually settled the Wilson-Karr Lawsuit. Plaintiff Brownrigg executed Confidential Settlement Agreement and General Release of All Claims ("Wilson-Karr Settlement") on behalf of himself and CommUnique on January 28, 2010. A true and correct copy of the Wilson-Karr Settlement is attached hereto as Exhibit D.

29.     The IPCO Defendants were also parties to the Wilson-Karr Settlement.  Plaintiffs are informed and believe, and thereupon allege, that authorized agents of the IPCO Defendants executed the Wilson-Karr Settlement. Per the Wilson-Karr Settlement, Plaintiff CommUnique, Plaintiff Brownrigg, and the IPCO Defendants denied any wrongdoing and all allegations against them. Plaintiffs Brownrigg and CommUnique also denied all allegations made by Karr and Wilson in their prior actions that precipitated the Wilson-Karr Lawsuit. The Wilson –Karr Settlement contained a general release of all claims in consideration for a payment of $750,000 to Wilson and Karr via the court-appointed receiver of CommUnique.

30.     At the time the Settlement Agreement was executed on January 28, 2010, at least $1.25 million remained potentially due to Plaintiff CommUnique under the 2008 Letter Agreement.

SANDERS
ROBERTS
355 S. GRAND AVENUE
SUITE 2450
LOS ANGELES, CA 90071

- 6 -
COMPLAINT

31.   Shortly after the January 28, 2010 execution of the Wilson-Karr Settlement, Defendant IPCO sought to modify the terms of the 2008 Letter Agreement.  Lee contacted Plaintiff Brownrigg by telephone and orally informed him that IPCO had unilaterally taken responsibility for paying the $750,000 under the Settlement Agreement.

32.   Lee, on behalf of Defendant IPCO, also represented to Plaintiff Brownrigg that Defendant IPCO was willing to pay for the attorney's fees incurred by Plaintiffs Brownrigg and CommUnique as well as providing Plaintiff Brownrigg consulting fees totaling $400,000 ($120,000 would be allocated to Plaintiff Brownrigg's attorneys fees).  Based on Defendant IPCO's purported and unilateral assumption of the $750,000 settlement, its offer to pay a consulting fee of $400,000 and Plaintiff's CommUnique's legal fees of $200,000, Lee argued that it was unfair that IPCO still remained obligated to pay the $1.25 million to CommUnique under the 2008 Letter Agreement should the validity of the '062 Patent be upheld.

33.   During these discussions, Lee failed to inform Plaintiff Brownrigg that Defendant IPCO had been concurrently in the process of negotiating an agreement with, among others, G.E. Appliances & Lighting, whereby Defendant IPCO would license applications based on the Patents.  Given that the sole reason for changing the profit-sharing terms of the 2004 Patent Agreement to the payment terms of the 2008 Letter Agreement was the IPCO Defendants' purported inability to commercialize the Patents while they were under re-examination, the IPCO Defendants' efforts to commercialize the Patents in 2010 would have been materially relevant to the Plaintiffs in determining whether to renegotiate payment terms for the '062 Patent.

34.   In addition, Lee failed to inform Plaintiff Brownrigg that the IPCO Defendants intended to seek continuation patents for technology derived from the Patents.

35.   Lee also failed to inform Plaintiff Brownrigg that IPCO's payment of the settlement and attorney's fees would constitute nonemployee compensation to Brownrigg and CommUnique for tax purposes, and that the IPCO Defendants would characterize it as such.  Lee further failed to inform Plaintiff Brownrigg that, if Plaintiff CommUnique chose not to forgive the $1.25 million debt owed by Defendant IPCO under the 2008 Letter Agreement in return for Defendant IPCO's payment of the settlement fees, attorney's fees and a consulting fee,



SANDERS
ROBERTS
355 S. GRAND AVENUE
SUITE 2450
LOS ANGELES, CA 90071

- 7 -
COMPLAINT

Defendant IPCO's required payment of $1.25 million would be considered capital gains income which would be taxed at a lower rate than nonemployee compensation. Furthermore, Lee failed to inform Plaintiff Brownrigg that Plaintiffs Brownrigg and CommUnique would be forgoing the tax deduction of the settlement and attorney's fees should Plaintiff Brownrigg agree to have the IPCO Defendants pay for the Wilson-Karr Settlement and attorney's fees.

36.      Based upon Lee's representations, Plaintiff Brownrigg agreed to discuss modifying IPCOs payment obligations for the Patents. On or about February 10, 2010, Plaintiff Brownrigg on behalf of Plaintiff CommUnique executed a letter agreement ("2010 Fee Payment Agreement") whereby the parties agreed any and all amounts due under the 2004 Patent Agreement and 2008 Letter Agreement "have been paid in full." Defendant IPCO was to pay $200,000 to Plaintiff Communique in satisfaction of legal fees to Defendant EBG, and $400,000 for Plaintiff Brownrigg's consulting services ($120,000 of which would be paid directly to Defendant EBG in satisfaction of legal fees incurred by Plaintiff Brownrigg in the Wilson-Karr Lawsuit). A true and correct copy of the 2010 Fee Payment Agreement is attached hereto as Exhibit E.

37.      On March 22, 2010, approximately a month-and-a-half after Plaintiff Brownrigg executed the 2010 Fee Payment Agreement on behalf of Plaintiff CommUnique with Defendant IPCO, Defendant IPCO issued a press release announcing its licensing agreement with G.E. Appliances & Lighting for technology based on the Patents. On March 23, 2010, Defendant IPCO issued another press release, this one announcing that it had entered into a licensing agreement with L.S. Research, Inc. for technology based on the Patents.

38.      After executing the 2010 Fee Payment Agreement, Plaintiff Brownrigg continued to be intimately involved in the defense of the '062 Patent and fully expected that the USPTO would uphold its validity. The USPTO upheld the validity of the '062 Patent on November 10, 2010.

39.      Plaintiffs later received 1099-MISC in the amount of $1.56 million characterized as non-employee compensation from Defendant IPCO. Despite several attempts by Plaintiffs to informally seek an accounting as to how Defendant IPCO reached the amount of $1.56 million or



SANDERS
ROBERTS
355 S. GRAND AVENUE
SUITE 3450
LOS ANGELES, CA 90071

- 8 -
COMPLAINT

1   any basis for its issuance, the IPCO Defendants have failed to provide any adequate explanation

2   for their issuance of a 1099-MISC. Plaintiffs are informed and believe, and thereupon allege,

3   that a portion of the 1099-MISC issued by IPCO Defendants reflects payments made under the

4   2010 Fee Payment Agreement.

5       40.     In or around August 2012, Plaintiffs first learned that the IPCO Defendants filed

6   an applications for continuation patents, Patents Number 8,000,314 ("314 Patent") and 8,233,471

7   ("'471 Patent"), derived from the '062 Patent.  The IPCO Defendants filed the application for the

8   '314 Patent on December 15, 2005 and the '471 Patent on June 11, 2009.

## FIRST CAUSE OF ACTION

### Fraud In The Inducement

11      41.     The allegations set forth in paragraphs 1 through 40 are re-alleged and

12  incorporated herein by reference.

13      42.     Lee each acted in concert with, and/or was the agent, partner, affiliate, joint-

14  venturer, co-conspirator, aider and abettor, servant, representative, or employee of IPCO

15  Defendants, and was at all times acting with and within the course and scope of the authority as

16  such, with the permission and consent with regards to the negotiation and execution of the 2004

17  Patent Agreement, the 2008 Letter Agreement, and the 2010 Fee Payment Agreement.

18      43.     Plaintiffs had licensed the Patents to IPCO Defendants, who professed to have the

19  ability and the facility to develop and commercial exploit the Patents given their superior

20  resources and stature in the automatic meter reading industry, based on the IPCO Defendants'

21  promise to provide Plaintiffs a return.  Furthermore, because the IPCO Defendants were in

22  charge of marketing, commercializing, and prosecuting the Patents, Plaintiffs relied on their

23  business judgment with respect commercialization as well as their fidelity with respect to

24  furnishing honest accountings of sales and their efforts to market and commercialize the Patents.

25  This reasonable reliance included Plaintiffs' reliance that the IPCO Defendants would provide

26  Plaintiffs all facts that would be material in determining whether to renegotiate payment terms

27  for the Patents.

28      44.     Furthermore, because of the aforementioned relationship between the IPCO

-9-

COMPLAINT

SANDERS
ROBERTS
350 S. GRAND AVENUE
SUITE 2450
LOS ANGELES, CA 90071

1  Defendants and Plaintiffs, the IPCO Defendants had a duty to provide all material facts to

2  Plaintiffs when the IPCO Defendants requested that Plaintiffs forgive the potential monies that

3  had been still owed under the 2008 Letter Agreement in return for Defendant IPCO's payment of

4  the Wilson-Karr Settlement, Plaintiff CommUnique's attorney's fees, and Plaintiff Brownrigg's

5  consulting fees.

6      45.     Lee, as the CEO and attorney of Defendant IPCO, knew that the IPCO

7  Defendants had been negotiating a licensing agreement for technology based on the Patents with,

8  among others, G.E. Appliances & Lighting, when he contacted Plaintiff Brownrigg to renegotiate

9  the IPCO Defendants' relationship with Plaintiffs.  Lee further knew that the reason why the

10  IPCO Defendants entered into the 2008 Letter Agreement that changed the profit-sharing terms

11  of the 2004 Patent Agreement into payment obligations of an amount certain was because of the

12  IPCO Defendants' purported inability at the time to commercialize the Patents in 2008.

13  Therefore, Lee knew that the IPCO Defendants' marketing and commercialization efforts would

14  have been material to the Plaintiffs' decisions on whether to renegotiate the payment provisions

15  of the 2008 Letter Agreement.

16      46.     In addition, Lee knew that there was still the potential debt of at least $1.25

17  million owed by Defendant IPCO under the 2008 Letter Agreement for the Patents.

18      47.     Furthermore, as an attorney and the CEO of Defendant IPCO, Lee was fully

19  aware of the tax benefits that Defendant IPCO would receive for paying the Wilson-Karr

20  Settlement and attorney's fees on behalf of Plaintiffs Brownrigg and CommUnique (specifically

21  that the IPCO Defendants would be able to claim such payments as deductions), and that IPCO

22  Defendants would be receive those benefits to the detriment of Plaintiffs Brownrigg and

23  CommUnique, who would no longer be able to claim the settlement and attorney's fees as tax

24  deductions.  Instead, Defendants' payments on behalf of Plaintiffs would be considered taxable

25  income.

26      48.     In order for the IPCO Defendants to obtain the rights to the Patents free and clear

27  of the IPCO Defendants' existing payment obligations as well as to obtain the ability to

28  commercialize the Patents free and clear of any future involvement by the Plaintiffs who



SANDERS
ROBERTS
355 S. GRAND AVENUE
SUITE 2450
LOS ANGELES, CA 90071

- 10-
COMPLAINT

1    developed those Patents, to withhold facts that would have been material to the Plaintiffs'

2    decision on whether to assume the risk that the '062 Patent would be upheld and continue with

3    the 2008 Letter Agreement payment terms, and to gain the tax deduction benefits of paying the

4    settlement and attorney's fees to the substantial tax detriment of Plaintiffs, Lee fraudulently

5    induced Plaintiffs to accept the terms of the 2010 Fee Payment Agreement by concealing the

6    agreement's tax consequences, the IPCO Defendants' concurrent efforts to commercialize the

7    Patents, and the IPCO Defendants' intent to seek continuation patents derived from the Patents.

8        49.    Plaintiffs would not have entered the 2010 Fee Payment Agreement and thus

9    would not have agreed to fully divest themselves of all interests in the Patents pursuant to the

10   2010 Fee Payment Agreement in return for the IPCO Defendants' payment of the Karr-Wilson

11   Settlement had the Plaintiffs known that the IPCO Defendants had been concurrently and

12   actively seeking to commercialize the Patents with, among others, G.E. Appliances & Lighting.

13       50.    Furthermore, had they known that they were exchanging their right to receive a

14   payment totaling approximately $1.25 million for the Patents potentially still owing under the

15   2008 Letter Agreement (which would be treated as capital gains with a lower taxable rate than

16   that of normal income) for not only the loss of deductions had Plaintiffs paid the Wilson-Karr

17   Lawsuit settlement themselves, but also for increased tax liabilities because the payments made

18   on Plaintiffs' behalf by others are treated as taxable income, Plaintiffs would have paid the

19   Wilson-Karr Lawsuit settlement and the attorney's fees themselves and not agreed to the 2010

20   Fee Payment Agreement.

21       51.    To put it more simply, the IPCO Defendants fraudulently induced Plaintiffs into

22   an agreement that was all loss and no benefit to Plaintiffs. The IPCO Defendants induced the

23   Plaintiffs to trade away tax deductions to which they would have been entitled, the potential

24   $1.25 million owed for the '062 Patent (which was found valid in substantial part due to Plaintiff

25   Brownrigg's efforts later that year), and concealed their concurrent efforts to commercialize the

26   Patents as well as their plans to further develop technology (which would have been extremely

27   material to the Plaintiffs in renegotiating the payment terms for the '062 Patent), all so that IPCO

28   Defendants could have the rights to the Patents free and clear any obligation to or involvement



SANDERS
ROBERTS
355 S. GRAND AVENUE
SUITE 2450
LOS ANGELES, CA 90071

- 11-
COMPLAINT

1   from Plaintiffs before entering into licensing agreements with others and applying for

2   continuation patents, as well as being able to claim tax deductions that should have been

3   Plaintiffs.

4       52.    As a direct and proximate result of the Defendants' actions as set forth above,

5   Plaintiffs have suffered damages in an amount yet presently undetermined, but according to

6   proof at trial.

7       53.    At all times herein, as a further direct, legal and proximate cause of the acts and

8   conduct of Defendants, Defendants acted with conscious disregard and their conduct was willful,

9   wanton, malicious, oppressive, and fraudulent, subjecting Plaintiffs to cruel and unjust hardship,

10  harm, damages and losses, and, in doing so, acted in and with conscious disregard of the rights

11  and interests of the Plaintiffs, justifying an amount of exemplary and punitive damages as against

12  Defendants, according to proof and pursuant to Civil Code Section 3294.

13  **SECOND CAUSE OF ACTION**

14  **(Breach Of Fiduciary Duty – Against Ipco Defendants)**

15      54.    The allegations set forth in paragraphs 1 through 53 are re-alleged and

16  incorporated herein by reference.

17      55.    Lee acted in concert with, and/or was the agent, partner, affiliate, joint-venturer,

18  co-conspirator, aider and abettor, servant, representative, or employee of IPCO Defendants, and

19  was at all times acting with and within the course and scope of the authority as such, with the

20  permission and consent with regards to the negotiation and execution of the 2004 Patent

21  Agreement, the 2008 Letter Agreement, and the 2010 Fee Payment Agreement, as well as

22  providing Plaintiff Brownrigg legal counsel as to the informal accounting sought by Wilson and

23  Karr.

24      56.    The relationship between Plaintiffs and the IPCO Defendants was not simply one

25  of an arms-length contractual assignor – assignee of assets.  Plaintiffs had licensed the Patents to

26  IPCO Defendants, who professed to have the ability and the facility to develop and commercial

27  exploit the Patents given their superior resources and stature in the automatic meter reading

28  industry, based on the IPCO Defendants' promise to provide Plaintiffs a return.  Furthermore,



SANDERS
ROBERTS
355 S. GRAND AVENUE
SUITE 2450
LOS ANGELES, CA 90071

- 12 -
COMPLAINT

1  because the IPCO Defendants were in charge of marketing, commercializing, and prosecuting

2  the Patents, Plaintiffs relied on the IPCO Defendants' business judgment with respect

3  commercialization as well as their fidelity with respect to furnishing honest accountings of sales

4  and their efforts to market and commercialize the Patents. Thus, the IPCO Defendants were

5  fiduciaries to the Plaintiffs whose actions must be undertaken not simply for the IPCO

6  Defendants own self-interest but for the benefit of the Plaintiffs as well. The IPCO Defendants'

7  fiduciary duties to the Plaintiffs extended to renegotiations of the agreements between them.

8    57.    The IPCO Defendants breached their fiduciary duties to the Plaintiffs by failing to

9  provide all material facts to Plaintiffs when they requested that Plaintiffs renegotiate the payment

10  terms of the 2008 Letter Agreements.

11    58.    As alleged above, Lee induced Plaintiffs to accept the terms of the 2010 Fee

12  Payment Agreement by concealing the IPCO Defendants' concurrent efforts to commercialize

13  the Patents (including their negotiations with G.E. Appliances & Lighting that led to a patent

14  licensing agreement the next month), the IPCO Defendants' intent to seek continuation patents

15  based on the Patents, and 2010 Fee Payment Agreement's tax consequences.

16    59.    By failing to inform the Plaintiffs of the IPCO Defendants' efforts to

17  commercialize the Patents, such as the IPCO Defendants' negotiations with G.E. Appliances &

18  Lighting, the IPCO Defendants deprived the Plaintiffs of facts that would have been material in

19  their decision on whether to assume the risk under the 2008 Letter Agreement that the '062

20  Patent would be found valid and reject the IPCO Defendants' request to renegotiate the payment

21  terms of the 2008 Letter Agreement. This failure by the IPCO Defendants also deprived the

22  Plaintiffs of their ability to potentially negotiate the return of the profit-sharing arrangement

23  given the IPCO Defendants' active commercialization attempts and their intent to seek

24  continuation patents.

25    60.    By failing to inform Plaintiffs of the tax consequences under the 2010 Fee

26  Payment Agreement, the Plaintiff lost their ability to claim the Wilson-Karr Lawsuit settlement

27  and the attorney's fees as deductions (and the ability to claim the $1.25 million the IPCO

28  Defendants would have owed for the Patents in November 2010 as capital gains income) and

SANDERS
ROBERTS
355 S. GRAND AVENUE
SUITE 2450
LOS ANGELES, CA 90071

1  incurred additional tax liabilities because the payments made by IPCO Defendants on their

2  behalf had  been categorized as non-employee compensation.

3      61.    Thus, the IPCO Defendants breached their fiduciary duties to the Plaintiffs by

4  inducing them to enter into an agreement that was all loss and no benefit to Plaintiffs for the

5  express purposes of obtaining the rights to the Patents free and clear of any obligation to or

6  future involvement with the Plaintiffs before entering into a licensing agreements with, among

7  others, G.E. Appliances & Lighting (as well as being able to claim tax deductions that should

8  have been Plaintiffs).

9      62.    As a direct and proximate result of the Defendant's actions as set forth above,

10  Plaintiffs have suffered damages in an amount yet presently undetermined, but according to

11  proof at trial.

12      63.    At all times herein, as a further direct, legal and proximate cause of the acts and

13  conduct of Defendant, Defendant acted with conscious disregard and their conduct was willful,

14  wanton, malicious, oppressive, and fraudulent, subjecting Plaintiffs to cruel and unjust hardship,

15  harm, damages and losses, and, in doing so, acted in and with conscious disregard of the rights

16  and interests of the Plaintiffs, justifying an amount of exemplary and punitive damages as against

17  Defendant, according to proof and pursuant to Civil Code Section 3294.

18                          **THIRD CAUSE OF ACTION**

19                       **Rescission Of 2010 Fee Payment Agreement**

20      64.    The allegations set forth in paragraphs 1 through 63 are re-alleged and

21  incorporated herein by reference.

22      65.    As alleged above, the IPCO Defendants fraudulently induced the execution of

23  2010 Fee Payment Agreement by concealing the IPCO Defendants' concurrent efforts to

24  commercialize the Patents, such as their negotiation with G.E. Appliances & Lighting, and the

25  agreement's tax consequences.

26      66.    As alleged above, Plaintiffs would not have executed the 2010 Fee Payment

27  Agreement had they known that they would lose their ability to claim the Wilson-Karr

28  Settlement and the attorney's fees as deductions while also incurring additional tax liabilities



SANDERS
ROBERTS
355 S. GRAND AVENUE
SUITE 2450
LOS ANGELES, CA 90071

- 14 -

COMPLAINT

1   because the payments made by IPCO Defendants on their behalf would be categorized as non-

2   employee compensation, that the IPCO Defendants were in the process of negotiating a licensing

3   agreement with, among others, G.E. Appliances and Electric, for the Patents at the time, and that

4   the IPCO Defendants intended to seek continuation patents for technology derived from the

5   Patents.

6        67.    Plaintiffs are therefore entitled to a rescission of the 2010 Fee Payment

7   Agreement, due to the fraud of Defendant.

8   **FOURTH CAUSE OF ACTION**

9   **Breach Of Contract**

10       68.    The allegations set forth in paragraphs 1 through 67 are re-alleged and

11  incorporated herein by reference.

12       69.    As alleged above, the IPCO Defendants fraudulently induced the execution of

13  2010 Fee Payment Agreement by concealing the IPCO Defendants' concurrent efforts to

14  commercialize the Patents, such as their negotiation with G.E. Appliances & Lighting, and the

15  agreement's tax consequences.

16       70.    As a result of the IPCO Defendants' fraudulent inducement, the 2010 Fee

17  Payment Agreement is void.  The 2008 Letter Agreement, and to the extent that its terms do not

18  conflict with the 2008 Letter Agreement, the 2004 Patent Agreement are therefore operative.

19       71.    Plaintiffs have fully performed their obligations under the 2008 Letter Agreement.

20       72.    On November 12, 2010, the USPTO upheld the validity of the '062 Patent.

21  Defendant IPCO therefore owes at least $1.25 million for the rights to the '062 Patent.

22       73.    Defendant IPCO has not paid Plaintiff CommUnique the $1.25 million owed for

23  the purchase of or the rights to the '062 Patent, and yet the IPCO Defendants continue to

24  commercialize the '062 Patent and seek continuation patents for technology derived from the

25  '062 Patent.

26       74.    Furthermore, as the Plaintiffs are entitled to a rescission of the 2010 Fee Payment

27  Agreement and the 2008 Letter Agreement only replaced those terms in the 2004 Patent

28  Agreement that expressly conflicted with the 2008 Letter Agreement, the accounting provisions

SANDERS
ROBERTS
355 S. GRAND AVENUE
SUITE 2450
LOS ANGELES, CA 90071

1    of the 2004 Agreement still obligate the IPCO Defendants to provide an accounting of their

2    commercialization efforts. The IPCO Defendants have failed to provide an accounting for the

3    commercialization of the Patents since 2008.

4        75.    Thus, Defendant IPCO has breached the terms of the 2008 Letter Agreement and

5    the 2004 Patent Agreement by failing to pay the $1.25 million owed for the rights to the '062

6    Patent and by failing to provide any accounting for the IPCO Defendants commercialization

7    efforts of the Patents.

8        76.    As a direct and proximate result of the Defendants' actions as set forth above,

9    Plaintiffs have suffered damages in an amount yet presently undetermined, but according to

10   proof at trial.

## FIFTH CAUSE OF ACTION

### Conversion

13       77.    The allegations set forth in paragraphs 1 through 76 are re-alleged and

14   incorporated herein by reference.

15       78.    As alleged above, the IPCO Defendants fraudulently induced the execution of

16   2010 Fee Payment Agreement by concealing the IPCO Defendants' concurrent efforts to

17   commercialize the Patents, such as their negotiations with G.E. Appliances & Lighting and

18   MPEGLA, and the agreement's tax consequences. The 2010 Fee Payment Agreement is

19   therefore void, and the 2008 Agreement is still operative.

20       79.    Because the USPTO upheld the validity of '062 Patent on or around November

21   10, 2010 and the IPCO Defendants have not paid the $1.25 million owing for the full assignment

22   of the '062 Patent, Plaintiffs own and have the rights to the '062 Patent.

23       80.    The IPCO Defendants have converted and continue to intentionally and

24   wrongfully convert for their own purposes without Plaintiff Brownrigg's informed consent the

25   '062 Patent rightfully belonging to Plaintiffs.

26       81.    As a direct and proximate result of the Defendants' actions as set forth above,

27   Plaintiffs have suffered damages in an amount yet presently undetermined, but according to

28   proof at trial.

- 16-

COMPLAINT

SANDERS
ROBERTS
355 S. GRAND AVENUE
SUITE 2450
LOS ANGELES, CA 90071

82.    Plaintiffs are entitled to the return of all funds, assets or property wrongfully converted by the IPCO Defendants.

## SIXTH CAUSE OF ACTION

### Accounting

83.    The allegations set forth in paragraphs 1 through 82 are re-alleged and incorporated herein by reference.

84.    As alleged above, the IPCO Defendants owed fiduciary duties to Plaintiffs. Plaintiffs request an accounting from the IPCO Defendants to determine the extent of their Patent commercialization efforts, the revenue generated thus far by those efforts, and the bases for their claim that the IPCO Defendants provided $1.56 million to the Plaintiffs in non-employee compensation.

85.    Furthermore, as the Plaintiffs are entitled to a rescission of the 2010 Fee Payment Agreement and the 2008 Letter Agreement only replaced those terms in the 2004 Patent Agreement that expressly conflicted with the 2008 Letter Agreement, the accounting provisions of the 2004 Agreement still obligate the IPCO Defendants to provide an accounting of their commercialization efforts.

86.    The extent of the IPCO Defendants' commercialization efforts, the revenue generated therefrom, and the basis of the IPCO Defendants' issuance of the $1.56 million 1099-MISC to the Plaintiffs are unknown to Plaintiffs and cannot be ascertained without an accounting of the books, records and accounts of the IPCO Defendants and Does 1 through 25.  An accounting is therefore required to property ascertain the respective rights and obligations of the parties.

## PRAYER FOR RELIEF

WHERETOFORE, Plaintiffs pray for:

1.    Rescission of the 2010 Fee Payment Agreement;

2.    Actual damages in an amount according to proof at trial;

3.    An award of exemplary damages as allowed by law;

4.    An award of costs of suit and attorneys' fees;



SANDERS
ROBERTS
355 S. GRAND AVENUE
SUITE 2450
LOS ANGELES, CA 90071

5.    Prejudgment interest, according to proof;

6.    An accounting, and

7.    Such other and further relief as the court deems just or equitable.

Dated: December 11, 2012

**SANDERS ROBERTS LLP**

By:
Justin H. Sanders
Attorneys for Plaintiffs COMMUNIQUE LLC, a
California Limited Liability Corporation; and EDWIN
BROWNRIGG, an individual

SANDERS
ROBERTS
355 S. GRAND AVENUE
SUITE 2450
LOS ANGELES, CA 90071

-18-
COMPLAINT

1

## DEMAND FOR JURY TRIAL

2    Plaintiffs hereby demand a trial by jury in the above-captioned matter on all matters so

3  triable.

4

5

6  Dated: December 11, 2012            **SANDERS ROBERTS LLP**

7                                      By:_____

8                                      Justin H. Sanders
                                       Attorneys for Plaintiffs COMMUNIQUE LLC, a
9                                      California Limited Liability Corporation; and EDWIN
                                       BROWNRIGG, an individual

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 19-

COMPLAINT

# EXHIBIT A



HOME | MEDIA | CONTACT

Intus<sup>IQ</sup> (formerly known as IPCO) is an inventor-based company established to share wireless mesh technology based on the work of inventors T. David Petite and Dr. Edwin Brownrigg with others.

Wireless Mesh is a set of robust self-organizing wireless networking and related technologies used in protocols such as ZigBee, Z-Wave, IEEE 802.15.4, WirelessHART and proprietary mesh networks and in other wireless applications such as SmartGrid, building automation, industrial controls, network backhaul, smart vehicles, home appliances, home automation and entertainment, sensor monitoring, healthcare monitoring and Internet service provisioning. Intus<sup>IQ</sup> developed Wireless Mesh in conjunction with SIPCO LLC (http://sipcollc.com).

Intus<sup>IQ</sup> and SIPCO license their technology through world patent licensing leader MPEG LA, LLC.

**For information about a license to the Wireless Mesh Patent Portfolio, go to
http://www.mpegla.com/main/programs/wirelessmesh**

HOME | MEDIA | CONTACT

Copyright 2012 Intus<sup>IQ</sup>

# EXHIBIT B

## *PATENT AGREEMENT*

THIS AGREEMENT is entered into by Communique Wireless, L.L.C., a California Limited Liability Company ("Communique"), and by STATSIGNAL IPC LLC, a Georgia Limited Liability Company ("SIPCO") and IPCO, LLC., a Georgia Limited Liability Company ("IPCO"), effective December 6, 2004 (the Effective Date).

WHEREAS, under an agreement dated December 6, 2004, Communique warranted that it was the full owner of full title and interest of certain "patents" set forth in Exhibit A (the "Patents"), and further agreed to assign the Patents to SIPCO; and

WHEREAS, the Patents were assigned to IPCO in a document dated December 11, 2004, which has been duly recorded with the United States And Trademark Office; and

WHEREAS, Communique, and IPCO wish to clarify the terms of the agreements dated December 6, 2004 and December 11, 2004, and memorialize all remaining terms of their mutual agreement;

NOW THEREFORE, in consideration of the mutual promises and other good and valuable consideration, the parties agree as follows:

1.  Patent Assignment.

1.1.  Communique reaffirms its warrantees set forth in the agreement of December 6, 2004 and acknowledges that the Patent Assignment to IPCO by Communique is valid and enforceable, subject to Communique's right under sections 1.2 through 1.3 below.

1.2.  IPCO agrees to assign the Patents back to Communique if IPCO fails to sufficiently commercialize the patents as set forth below, promptly upon the payment of one dollar ($ 1.00) by Communique, provided that payment in full to Communique under section 3.1 herein, has not been previously made by IPCO. As used herein "Exclusive License" means-a license to substantially all or all rights under the Patents within one or more fields of use, but for purposes of this Agreement "Exclusive License" does not mean one or more licenses to substantially all or all rights under the Patents within narrow or minor field(s) of use covered by the Patents.

1.2.1.  IPCO shall be presumed to be sufficiently commercializing the Patents if:

1.2.1.1.  as of one year after the Effective Date, IPCO has either licensed and received royalty payments on the Patents, or IPCO has filed and served a Complaint against a company believed to be infringing the Patents but which has refused to take a license under the Patents; or

1.2.1.2.  as of two years after the Effective Date, IPCO has paid Communique a minimum of $2 Million for the Patents; or

1.2.1.3.  as of five years after the Effective Date, IPCO has paid Communique a minimum of $5 Million for the Patents; or

1.2.1.4.  for each year after the fifth year anniversary of this Agreement, IPCO pays Communique a minimum of $500,000 for the Patents.

1.2.2.   IPCO shall be presumed to have failed to sufficiently commercialize the Patents if:

1.2.2.1.   as of two years after the Effective Date, IPCO has not paid Communique a minimum of $500,000 for the Patents;

1.2.2.2.   as of five years after the Effective Date, IPCO has not paid Communique a minimum of $2 Million for the Patents; and

1.2.2.3.   for each year after the fifth anniversary, IPCO has not paid Communique a minimum of $250,000 for the Patents;

provided, however, that the minimums of sections 1.2.2.1 - 1.2.2.3, for the respective periods, shall not be due if the Patents are the subject of a pending law suit or suits by IPCO against an infringer or infringers.

1.2.3.   IPCO shall have failed to sufficiently commercialize the Patents upon the occurrence of the following:

1.2.3.1.   one year after the Effective Date, IPCO has neither licensed and received royalty payments on the Patents, nor filed a Complaint, nor initiated license negotiations with or against a company believed to be infringing the Patents and which has refused to take a license under the Patents; or

1.2.3.2.1   IPCO agrees, or assents in negotiations, to extend a license under the Patents for a royalty rate at which IPCO does not maintain the overall value of the Patents; or

1.2.3.2.   IPCO takes one of the following overt acts inconsistent with its obligation of sufficiently commercializing the Patents:

1.2.3.2.1   IPCO becomes insolvent, makes or assents in negotiations to make an assignment for the benefit of creditors, or agrees or is threatened by creditors to institute bankruptcy or receivership proceedings; or

1.2.3.2.2   IPCO allows any of the Patents to go abandoned; or

1.2.3.2.3   any action by IPCO is adjudicated by a Court to be a misuse of the Patents; or

1.2.3.2.4   IPCO attempts to assign or grant an Exclusive License under the Patents before Payment in full to Communique has been made.

1.3.   Upon payment and acceptance of the One Dollar ($1.00) Buy-Back Amount of section 1.2 herein, all right, title and interest under the Patents and any licenses extended thereon, including the right to future royalty payments and past damages not yet collected, shall be promptly assigned to Communique by IPCO. If any Complaint has been served, or license negotiation commenced and is still pending prior to Communique's request for the Buy-Back Amount, upon payment of the Buy-Back Amount Communique shall be entitled to promptly take control of the litigation or negotiation, but IPCO shall be entitled to receive out of any amounts awarded an equivalent to what it might have received as its

portion of Net Revenues, equal to 50% of (i) the damages and interest awarded or royalty negotiated, less (ii) the reasonable costs and attorneys fees paid and (iii) costs and attorneys fees incurred by Communique in connection with the litigation or negotiation.

2.       License to Communique.

2.1      In consideration of the assignments granted to IPCO, IPCO agrees to grant and hereby grants to Communique a nonexclusive, irrevocable, royalty-free (except as set forth in clause (c) below) license under the Patents to make, have made, sell or offer to sell, import, and use in the United States any products that include wireless networking code copyrighted by Communique ("Licensed Products"). This license to Communique includes the limited right to sublicense AirTegrity Wireless (currently having a place of business at 276 Kingsbury Grade, Suite 206, Stateline, Nevada 89449-5188), or if Dr. Brownrigg is no longer employed by AirTegrity Wireless, a substitute entity of Dr. Brownrigg's choice agreeing to co-develop and sell Licensed Products, to make, have made, sell or offer to sell, import, and use, in the United States, Licensed Products, including the right to license their distributors and end-users, respectively, to distribute and use, respectively, the Licensed Products; provided, however, that (a) any sublicense to AirTegrity and substitute entities shall be non-transferable, (b) Communique may not sublicense any entity that has been sued by IPCO, and (c) any sublicense to a substitute entity, with respect to any sales of Licensed Products in excess of $1 Million annually ("Royalty-Bearing Sales"), shall be at a royalty rate no less than the most-favored royalty rate offered by IPCO for the Patents, which rate IPCO will promptly confirm in writing upon Communique's request.

2.2.     Within one month of having received payment that include a Sales Royalty, Communique shall send IPCO a payment report (a "Sales Report") setting forth the amount of Royalty-Bearing Sales, and the amount of Sales Royalty received. Once Communique sublicenses such substitute entity(ies) obligated to pay on Royalty-Bearing Sales, Communique shall provide IPCO a report at least once a quarter, and if there are no Royalty-Bearing Sales, a written statement to that effect shall be furnished.

2.3.     Concurrently with each Sales Report, and in no event later the 60th day following the end of the quarter, Communique shall pay IPCO, by check or wire transfer (to such other account as may be designated by IPCO to Communique in accordance with the provisions of section 5.8 below) of immediately available funds, 50% of the Sales Royalty received by Communique in the preceding quarter.

2.4. IPCO shall have full control over the prosecution of any continuation, reissue or re-examined application that is one of the Patents. At least one month before any patent issues on a pending application that is one of the Patents, IPCO shall either (a) file a co-pending continuation application pursuing additional claim coverage, or (b) immediately notify Communique and allow Communique to elect to pursue a continuation application before a patent issues. Should Communique so elect to pursue a continuation application, IPCO shall assist and immediately assign to Communique all right, title and interest to any such continuation application and all applications and patents stemming from it (the "Re-Assigned Patents"), subject to a retained non-exclusive license to IPCO to license any Re-Assigned Patents as part of a license of the remaining Patents owned by IPCO; and any compensation received for the Re-Assigned Patents by IPCO shall be considered Net Revenues under this Agreement.

3.    Payments

3.1.    In full consideration for the assignment of the Patents by Communique to IPCO, and in further consideration of the warrantees made herein and in the December 6, 2004 Agreement, IPCO confirms that it agrees to pay Communique the sum of ten million dollars (\$ 10,000,000.00) as payment in full for the assignment of the Patents to IPCO, said sum to be payable to Communique in accordance with the schedule set forth bellow in section 3.2.

3.2    IPCO agrees to pay Communique 50% of Net Revenues received under all licenses and assignments of the Patents. "Net Revenue" shall mean all compensation received relating to the Patents including licensing royalties and litigation damages, less reasonable Licensing Costs until payment in full under section 3.1 has been made. "Licensing Costs" shall mean all costs directly attributable to activities for prosecuting, licensing or enforcing the Patents, or administering or enforcing licenses of the Patents, including but not limited to: (1) investigator costs for investigations about persons suspected of using the Patents; (2) transportation, lodging and communication expenses during licensing negotiations; (3) costs of litigation; (4) that portion of IPCO personnel salaries to the extent shown to be necessary and solely incurred for licensing or enforcing the Patents, or administering or enforcing licenses of the Patents; and (5) those costs paid to Communique or Dr. Brownrigg for assistance pursuant to section 4 below. To the extent such activities are also for licensing, enforcement or administration of other property or rights, Licensing Costs shall only include a percentage of costs for such activities based on the percentage amount of compensation shown to be received for the Patents.

3.3.    IPCO agrees to make written reports (each a "Payment Report") to Communique quarterly by the 60th day following the end of the quarter, setting forth, in reasonable detail: (i) all Net Revenue received during the preceding quarter, including a description of all compensation received, by entity paying, and Licensing Costs incurred; and (ii) if no amount is accrued during any quarterly period, a written statement to that effect shall be furnished.

3.4.    Concurrently with each Payment Report, and in no event later than the 60th day following the end of the quarter, IPCO shall pay Communique, by check or wire transfer (to such other account as may be designated by Communique to IPCO in accordance with the provisions of section 5.8 below) of immediately available funds, 50% of the Net Revenues received by IPCO in the preceding quarter.

3.5.    IPCO agrees to keep records showing the activities undertaken, costs incurred, and payments or other compensation received relating to the Patents, in sufficient detail to enable the percentage Net Revenue payable hereunder by IPCO to be determined, and further agrees to permit Communique and its accountants to examine its books and records from time to time to verify the Payment Reports provided for in section 3.2 for a reasonable period of not less than two (2) years following the submission of each License Report. Communique agrees to keep records showing the activities undertaken, and payments or other compensation received relating to Royalty-Bearing Sales, in sufficient detail to enable the percentage of Sales Royalties payable hereunder by Communique to be determined, and further agrees to permit IPCO and its accountants to examine its books and records from time to time to verify the Sales Reports provided for in section 3.4 for a reasonable period of not less than two (2) years following the submission of each Sales Report.

*PATENT AGREEMENT*                    4

4.    Cooperation.

4.1.    Upon IPCO's written request, Communique agrees to provide all reasonable assistance and cooperation in support of the prosecution, licensing or enforcement of the Patents. All costs for such assistance and cooperation shall be paid for by IPCO, and those costs first incurred by Communique shall be reimbursed by IPCO within one month of Communique's invoice. Unless otherwise agreed, Dr. Brownrigg's time shall be invoiced and paid for at his then current consulting rate. All such payments may be included as Licensing Costs by IPCO.

4.2.    The Parties shall take all such actions and execute all such documents as may be necessary to carry out the purposes of this Agreement, whether or not specifically provided for in this Agreement.

4.3. Each Party shall notify the other Party in writing of any suspected infringement(s) of the Patents and shall inform the other Party of any evidence of such infringement(s).

4.4.    Communique and IPCO may request the other Party to participate in jointly developing wireless networking technology, and both Parties agree to negotiate in good faith with the other, and its affiliated companies as appropriate, towards a mutually acceptable joint development agreement.

5. General Terms

5.1.    Marking.  Both Parties shall require all licensees to place in a conspicuous location, on any product made or sold under any Patent, any required patent notice, including the notice required under U.S. law in accordance with 35 U.S.C. §287.

5.2.    Termination.  This Agreement shall terminate upon (a) the payment in full for the Patents by IPCO as set forth in section 3.1, or (b) the payment of the Buy-Back Amount to IPCO and its re-assignment of the Patents to Communique, or (c) the expiration of all the Patents and all obligations to pay compensation under the Patents.

5.3.    Non-Assignability.  This Agreement imposes personal obligations on both Parties. IPCO shall not assign or grant an Exclusive License to any of the Patents, and no assignment or Exclusive License shall be valid or enforceable without the prior written consent of Communique, which consent shall not be unreasonably withheld. Neither Party shall assign any of its rights or obligations under this Agreement without the prior written consent of the other Party.   Notwithstanding the foregoing, Communique may assign all of its rights and obligations to Edwin Brownrigg as part of its winding down of business or sale of substantially all of its assets, and either Communique or Edwin Brownrigg may assign all or part of their right to payments under section 3 above.

5.4.    Severability.  The Parties agree that if any part, term, or provision of this Agreement shall be found illegal or in conflict with any valid controlling law, the validity of the remaining provisions shall not be affected thereby.

5.5.    Confidentiality.  Both Parties agree to treat the terms of this Agreement, and all notices and reports received hereunder, as confidential information of both Parties, and not to use or disclose, or permit others to use or disclose, any such confidential information without requiring the disclosed

*PATENT AGREEMENT*                    5

information to be kept confidential by the receiving party except as required by a Court or regulatory agency.

     5.6.    Waiver. The waiver of a breach hereunder may be effected only by a writing signed by the waiving party and shall not constitute a waiver of any other breach.

     5.7.    Integration, Alteration. This Agreement represents the entire understanding between the Parties, and supersedes all other agreements, express or implied, between the Parties concerning the Patents. Notices. For the purpose of all written communications and notices between the Parties, their addresses shall be:

> Dr. Edwin Brownrigg, Manager
> Communique Wireless, L.L.C.
> 328 King Road,
> Roseville, CA 95678

and

> IPCO LLC.
> David Petite, President
> 200 Galleria Parkway, Suite 1820
> Atlanta, GA 30339

or any other addresses of which either Party shall notify the other Party in writing. All such notices shall be sent by first class mail, postage prepaid.

     5.8.    Dispute Resolution.5.8.1.    Consents and Approvals.    If the joint consent or mutual consent of a Party or the Parties is required under this Agreement the Party or Parties shall in good faith attempt to reach a consensus or their consent and no Party shall unreasonably withhold its consent to any requested approval.

     5.8.2.    Disputes. Unless otherwise mutually agreed to by the Parties, any dispute, controversy or claim arising out of, under, or relating to this Agreement (a "Dispute"), shall be resolved in accordance with the provisions of this Section 5.10. The Parties shall first attempt in good faith to resolve any Dispute through discussions among themselves. If such discussions are unsuccessful, and the Dispute remains unresolved for a period of ten (10) days, then any Party may submit a written notice to the other Parties requiring that the Dispute be submitted to the good faith negotiation process set forth in section 5.10.3 below. If the Parties have initiated such good faith negotiation process and remain unsuccessful in resolving a Dispute, either Party may proceed immediately to litigation concerning the Dispute.

     5.8.3.    Good Faith Negotiations. The process of "good faith negotiations" requires that each Party set out in writing to the other its reason(s) for adopting a specific conclusion or for selecting a particular course of action, together with the sequence of subordinate facts leading to the conclusion or course of action. The Parties shall attempt to reach a mutually agreeable resolution of the Dispute through their respective President and Manager. The good faith negotiation process shall include at least two in-person meetings to discuss any Dispute. Unless otherwise mutually agreed, the first meeting shall take place within ten (10) calendar days after either Party has received written notice from the other of the

*PATENT AGREEMENT*        6

desire to commence formal negotiations concerning the Dispute. Unless otherwise mutually agreed, the second meeting shall take place no more than ten (10) calendar days later. In the event the designated officer for one side of the Dispute refuses to attend a negotiation meeting, then the Party on the other side of the Dispute may proceed immediately to litigation concerning the Dispute.

5.8.4.   Confidentiality and Non-Admissibility of Statements. Each Party hereby agrees that all statements made in the course of dispute resolution, as contemplated in this Section 5.10, shall be confidential and shall not be disclosed to or shared with any third parties (other than any person whose presence is necessary to facilitate the dispute resolution process). Each Party agrees and acknowledges that no statements made in or evidence specifically prepared for dispute resolution under this Section 5.10 shall be admissible for any purpose in any subsequent litigation.

5.9. Governing Law. This Agreement and the interpretation of its terms shall be governed by the laws of the State of Georgia, without application of conflicts of law principles.

**IN WITNESS WHEREOF** the Parties have caused this Agreement to be executed by their duly authorized officers or managers on the respective dates and at the respective places hereinafter set forth.

| **IPCO LLC** | **STATSIGNAL IPC LLC** | **Communique Wireless, L.L.C.** |
|---|---|---|
| By: _____ | By: _____ | By: _____ |
| Name: David Petite, Pres. | Name: David Petite, Pres. | Name: Edwin Brownrigg, Manager |
| Atlanta, Georgia | Atlanta, Georgia | Roseville, California |
| Date: _____ | Date: _____ | Date: _____ |

*PATENT AGREEMENT*                    7

## EXHIBIT A

### ASSIGNED PATENTS AND APPLICATIONS

PATENTS
US PATENT NUMBER.......................................................6,044,062
.......................................................6,249,516

APPLICATIONS

US APPLICATION NUMBER.........................................................10/386,159 filed March 10, 2003
(Now publication #US 2004/0062224 A1-April 1, 2004)
US APPLICATION NUMBER.........................................................09/492,933 filed January 27, 2000
US APPLICATION NUMBER.........................................................08/760,894 filed December 6, 1996
US APPLICATION NUMBER.........................................................09/492,930 filed January 27, 2000,
and any and all Letters Patent which may be granted therefore in the United States and its territorial
possessions, and any and all divisions, reissues, continuations, continuations-in-part and extensions
thereof.

# 2830942_v1

*PATENT AGREEMENT*                                    8

# EXHIBIT C

# CommUnique Wireless LLC

328 King Road, Roseville, CA, 95678

Oliver Lee

2849 Paces Ferry Road

Suite 660

Atlanta

GA 30339

Date: 4/11/08

RE: Purchase of CommUnique / IPCO Patent Agreement

Dear Oliver

In response to my request to IPCO (now doing business as IntusIQ) to provide earlier payments under the CommUnique /IPCO Patent Agreement, such payments being paid by IntusIQ prior to CommUnique having earned such payment from the patents under the Patent Agreement I confirm the following. Please accept this letter as my consent and the authorization by me on behalf of CommUnique Wireless LLC to do all things necessary and appropriate for the transfer of the following rights and privileges to IntusIQ, LLC.

<u>Initial Payments</u>

Payment of $58,000 cash to Bradshaw and Associates

- Of which $20,000 was paid by Oliver Lee on 4/7/08
- Of which $38,000 was paid by SIPCO on 4/11/08

Payment of $10,000 cash to CommUnique payable on 4/11/08.

Payment of $5,000 per month to Edwin Brownrigg for 2 months payable on 1st of each month beginning June 1, 2008.

Payment of $170,000 payable to CommUnique payable on September 30, 2008.

Payment of $50,000 payable to CommUnique payable on June 15, 2008.

Guaranty for $10,000,000 in favor of CommUnique Wireless and Edwin Brownrigg dated July 27, 2005, signed personally by David Petite is hereby cancelled.

Contingent Payments

Based on the 516 and 062 patents coming out of reexamination without substantial changes to the patented claims :

One or more of the principals of Intus$^{IQ}$ shall have the opportunity to purchase the CommUnique / IPCO Patent agreement for a full and final payment of $2,200,000 payable 18 months from the effective date of this Agreement. Should the 062 and 516 patent be substantially modified or rejected in full from reexamination proceedings, the parties shall agree a value based on the effective patent coverage of the reexamined patents.

No further payments to CommUnique or Edwin Brownrigg shall be due from IntusIQ prior to the 18 month final payment, and no payments shall be due after this final payment is made.

This consent letter is intended to operate on behalf of me personally and on behalf of CommUnique Wireless LLC and each of its interest holders. No further evidence of my consent and approval shall be required or necessary to effectuate the purposes hereof.

_____

Edwin Brownrigg, as an Individual

_____

Edwin Brownrigg , on behalf of CommUnique Wireless LLC

as managing member and 80% interest holder.

Telefax Transmittal

# OLIVER LEE, ESQ.

CONFIDENTIALITY NOTE: The information contained in this facsimile message is legally privileged and confidential information intended only for the use of the individual or entity named below. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this telecopy is strictly prohibited. If you have received this telecopy in error, please notify us immediately by telephone and return the original message to us at the address to the right by U.S. Mail. Thank you.

Suite 201
636 South Central Avenue
Atlanta, Georgia 30354

TELEPHONE  404-767-1092
TELECOPIER 404-767-1062

| | |
|---|---|
| **CLIENT/MATTER NO.:** | 7777.001 |
| **DATE:** | December 12, 2008 |
| **TO:** | Dr. Edwin Brownrigg |
| | 916-783-8208 |
| **FAX:** | |
| **PAGES:** | 3 (Including cover sheet) |
| **FROM:** | Oliver Lee |
| **TELEPHONE NO.:** | 404-767-1092 |
| **FAX NO.** | 404-767-1062 |



*Sipco*
RF Mesh

636 South Central Avenue, Suite 201, Atlanta, GA 30354
Tel 678-228-1192 / Fax 404-767-1062

December 12, 2008

Dr. Edwin Brownrigg
CommUnique Wireless, LLC
328 King Road
Roseville, CA 95678

Dear Edwin:

As you know, the original agreement between CommUnique, LLC and IPCO, LLC of 2004 has been replaced with the Letter Agreements by and between CommUnique, LLC, you, and the undersigned dated April 11, 2008.

Pursuant to those Agreements, CommUnique transferred all right and title to the Purchase Note to IPCO in exchange for a payment of $2,500,000 payable over a designated period with the final payment due on or before October 1, 2009.

This letter will confirm the parties' understandings of the Agreement between them and will be the controlling authority to determine the rights and obligations of the parties. All other Agreements between the parties are void to the extent that such Agreements conflict with this Letter Agreement. The parties agree that, pursuant to the Agreement, SIPCO has paid to or on behalf of CommUnique $105,000 to date, leaving $195,000 due to be paid presently, with the balance of the $2,500,000 amount to be paid on or before October, 2009. We have agreed to make a payment of $200,000 rather than the $195,000 on or before December 10, 2008.

The parties acknowledge and agree that the '062 patent is still in the re-examination process. Should less than all claims in the '062 be approved at the end of the re-examination, the parties agree that the $2,500,000 purchase price payable pursuant to the Agreement shall be adjusted on a percentage basis.

For example, should 50% of the '062 claims be allowed at the conclusion of the re-examination process, then CommUnique shall be entitled to $625,000 of the $1,250,000 attributable to the '062 in the Letter Agreement. The parties represent and warrant that those executing this letter have full power and authority to do so. Further, CommUnique

acknowledges that IPCO, LLC has no responsibility to any person or entity (including CommUnique members and creditors) other than CommUnique.

Should the above reflect your understanding of our present agreements, please sign below on behalf of CommUnique as the managing member and individually.

Very truly yours,

Oliver Lee

Edwin R. Brownrigg, Individually

CommUnique Wireless, LLC

By: Edwin R. Brownrigg
    Managing Member and
    Controlling Holder

# EXHIBIT D

## CONFIDENTIAL SETTLEMENT AGREEMENT
## AND GENERAL RELEASE OF ALL CLAIMS

This Confidential Settlement Agreement and General Release of all Claims ("Agreement") is made and entered into by and between Thomas W. Wilson ("Wilson") and William Greg Karr ("Karr") (collectively, "Plaintiffs") on the one hand, and Edwin B. Brownrigg ("Brownrigg"), Donna Brownrigg, CommUnique Wireless, LLC ("CommUnique"), IPCO, LLC, ("IPCO"), and SIPCO LLC ("SIPCO") (collectively "Defendants") on the other hand (collectively, all are "Parties").

### RECITALS

**WHEREAS,** Plaintiffs have asserted various claims against the Defendants in the lawsuit entitled *Thomas W. Wilson and William G. Karr, individually and derivatively on behalf of CommUnique Wireless, LLC v. Edwin B. Brownrigg, IPCO, LLC, SIPCO, LLC, CommUnique Wireless, LLC, and Does 1-25,* Alameda County Superior Court, Case No. RG09440386 arising out of various business and contractual relationships ("Action");

**WHEREAS,** Plaintiffs have previously obtained various judgments and awards against Brownrigg and CommUnique (collectively the "Prior Judgments");

**WHEREAS,** Defendants deny any and all allegations made by Plaintiffs in the Action or as part of the Prior Judgments and do not admit any liability for same;

**WHEREAS,** IPCO and SIPCO have each denied that it is subject to this jurisdiction of the California courts for purposes of this Action, or otherwise;

**WHEREAS,** Plaintiffs and Defendants wish to fully and finally settle, resolve, and satisfy the Action, the Prior Judgments, and any other claims and controversies existing between and among them;

**WHEREAS,** Wilson, Karr and Brownrigg are members of CommUnique, although the percentage of their respective membership interests is in dispute; and

**WHEREAS,** as an integral part of the settlement of the Action and the Prior Judgments, Wilson and Karr desire for CommUnique to redeem their ownership interests in CommUnique.

### DECLARATIONS AND ACKNOWLEDGEMENTS

The Parties mutually declare, acknowledge, represent and warrant that:

(a)     The terms of this Agreement are the product of mutual negotiation and compromise between Plaintiffs and Defendants and each Party has had the opportunity to make and consider proposals for inclusion in this Agreement;

(b)     The Parties have been represented by counsel of their own choosing during the negotiation of this Agreement;

Initials: 

- Page 1 -

(c)     The Parties have carefully considered other alternatives to executing this Agreement;

(d)     The meaning, effect and terms of this Agreement are fair, reasonable, adequate, in their mutual best interest, and have been fully explained to the Parties, who understand that this Agreement settles, bars and waives any and all claims that any Party has or could possibly have against any of the other Parties and the other persons and entities in the release described herein;

(e)     The settlement of claims between Plaintiffs and Defendants is made for good and sufficient consideration to which the parties may not otherwise be entitled, and no Party will be entitled to any further or additional consideration from any other party, by contract or law as a result of the matters settled herein;

(f)     The Parties have had a reasonable period of time within which to consider this Agreement, that they have thoroughly discussed or have been afforded the opportunity to discuss all aspects of this Agreement with an attorney, that they have carefully read and fully understand all of the provisions of this Agreement, and that they are voluntarily and knowingly entering into this Agreement; and

(g)     By executing this Agreement, IPCO and SIPCO shall not be deemed to have availed themselves of the courts of California, or be otherwise deemed to have made contact with California for purposes of jurisdiction. [IPCO and SIPCO contend that this] Agreement is negotiated, executed and performed by them in the State of Georgia, and constitutes a special limited appearance solely for purposes of settling the Action.

## AGREEMENT

Therefore, for and in consideration of the conditions, covenants and agreements contained herein, and other good and valuable consideration, and intending to be legally bound, the Parties agree as follows:

1.     **CONSIDERATION**

(a)     For and in consideration of the commitments made herein by Plaintiffs, defendants CommUnique and Brownrigg agree to pay Plaintiffs a total sum of $750,000 ("Settlement Payment") as the purchase price for CommUnique to redeem the ownership of Plaintiffs in CommUnique. The parties agree to simultaneously execute the Percentage Interest Repurchase Agreement attached hereto as Exhibit "A". Plaintiffs, CommUnique, and Brownrigg shall treat the Settlement Payment as a distribution payment made in complete liquidation of the Plaintiffs' respective membership interests and capital accounts in CommUnique.

(b)     The Settlement Payment set forth in Paragraph 1(a) above, shall be made payable in one check to the Trust Account of Bowles & Verna, LLP. The Settlement Payment shall be delivered by Susan Uecker, court-appointed Receiver for CommUnique (the "Receiver"), to the law firm of Bowles & Verna for the benefit of Plaintiffs upon receipt of an

Initials: _____ _____
          _____ _____
          _____ _____

- Page 2 -

executed copy of the Stipulated Court Order attached hereto as Exhibit "B". Plaintiffs shall present the Stipulated Court Order attached hereto as Exhibit "B" to the Court following the execution of this Agreement by all Parties.

(c)     It is further acknowledged and agreed between the Parties that, except as is otherwise set forth above, the terms of settlement set forth herein are in no respect contingent or dependent on the ultimate tax consequences relating to the Settlement Payment and that the Defendants shall not be responsible or liable to Plaintiffs in any respect whatsoever for the tax consequences or tax liabilities that may result from the Settlement Payment. Defendants have made no representations or warranties to Plaintiffs constituting tax advice and all Parties shall be responsible for obtaining their own tax advice and information, as deemed appropriate. Additionally, Plaintiffs shall agree to hold harmless the Defendants from any taxes, assessments, penalties, interest payments or costs (excluding attorneys' fees) that the Defendants may at any time incur by reason of any demand, proceeding, or suit brought against the Defendants arising out of or in any manner related to any federal, state or local taxes allegedly due from Plaintiffs in connection with this Agreement. As a condition to receiving such indemnification, the Party seeking indemnification shall notify Plaintiffs of the event giving rise to the request for indemnification, and provide Plaintiffs with the opportunity to provide the defense of any legal or administrative proceeding.

(d)     Plaintiffs have claimed that the monies they received in 2008 from CommUnique were paid as a member distribution. CommUnique will not take a position inconsistent with Plaintiffs' position regarding this 2008 payment, provided that CommUnique's tax counsel and advisors deem it legal and proper for CommUnique not to take an inconsistent position. If CommUnique, based upon the advice of its advisers, determines that it must take a different position, it will advise Plaintiffs of it intention to do so in advance.

## 2.     GENERAL RELEASE

The Parties hereto of their own free will knowingly and voluntarily and irrevocably release and forever discharge and covenant not to sue one another, or their respective successors, assigns, executors, administrators, officers, directors, shareholders, members, owners, employees, agents, attorneys, insurers and representatives, parents, affiliate or subsidiary companies, or any of their current or former employees, officers, directors, agents, including but not limited to, the representatives and insurance carriers, and whether in an individual or derivative capacity, from any and all actions, causes of action, claims for relief, suits, claims, demand in arbitration, charges, complaints, contracts (whether oral or written, express or implied from any source), demands and promises, whatsoever, in law or equity, which, against one another, their heirs, executors, administrators, successors and assigns they may have or hereafter can, shall or may have, including all unknown, undisclosed and unanticipated losses, wrongs, injuries, debts, fees, attorneys fees, losses, claims, owed monies, expenses of any kind or description, or damages to, for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the end of time, including, but not limited to all claims (whether known or unknown or whether ongoing or not) of any kind arising out of or relating in any way to the business relationships between the Parties, collectively or any combination thereof.

Initials: _____  _____

_____  _____

- Page 3 -

### 3.   DISPOSITION OF LITIGATION

The Parties, through counsel, and subsequent to the execution of this Agreement, shall within five (5) business days after delivery to Plaintiffs' counsel of the Settlement Payment, execute and file all documents and take any steps which may be necessary or requested to dismiss with prejudice the Action.  The funds to be paid to Plaintiffs will not be distributed to them by Plaintiffs' counsel until a dismissal of the Action with prejudice is filed.  Plaintiff will assign their Prior Judgments, including any and all rights thereto, to CommUnique. CommUnique disputes the validity and value, if any, of the Prior Judgments and no part of the Settlement Payment is being paid to Plaintiffs based upon the Prior Judgments.  In connection with these filings, each Party will immediately cause such documents to be sent to counsel for the other Party.  Each of the Parties agrees to bear its own costs and attorney fees.

### 4.   WAIVER OF CIVIL CODE SECTION 1542

The Parties acknowledge that they may hereafter discover facts different from, or in addition to, what they know or believe to be true with respect to the matters herein released, and agree that the Mutual General Release set forth above shall be and remain in effect in all aspects as a complete and general release as to the matters released, notwithstanding any such different or additional facts.  The Parties acknowledge that they have been informed of Section 1542 of the Civil Code of the State of California, and do hereby expressly waive and relinquish all rights and benefits which he, she or it may have under Section 1542, which reads as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The Parties waive the provisions of Section 1542 of the California Civil Code or any similar statutes, laws, or principles of any jurisdiction which may apply to this Agreement.  The Parties acknowledge that this waiver is an essential term of the Agreement, without which the consideration provided herewith would not have been given.

### 5.   REPRESENTATIONS, WARRANTIES AND COVENANTS

Plaintiffs represent and warrant as follows:

(a)   This is a binding agreement, enforceable against all Parties in accordance with its terms;

(b)   No Party has sold, assigned, transferred, or otherwise disposed of any of the claims, demands, or rights that are the subject of this Agreement, nor has any lien been placed on any such rights by a third party;

(c)   Each Party has full power and sole authority to enter into this Agreement and no further consent or approval is required as a condition to the validity of this Agreement; and

Initials: _____

- Page 4 -

(d)     No Party has relied on any representations or promises in entering into this Agreement except those expressly contained herein.

### 6.     MERGER/ NO MODIFICATION

Each Party warrants that no promise, inducement, or agreement not expressed herein has been made to any Party in connection with this Agreement, and that this Agreement constitutes the entire agreement between the Parties and supersedes all prior or contemporaneous written or oral communications, understandings and agreements with respect to the subject matter hereof. It is expressly understood and agreed that this Agreement may not be altered, amended, modified or otherwise changed in any respect whatsoever except by a writing duly executed by authorized representatives of each of the Parties.  Each Party hereby agrees that it will make no claim at any time or place that this Agreement has been orally altered or modified or otherwise changed by oral communication of any kind or character. No Party will make any claim that it has discovered new facts which vitiate this Agreement.

### 7.     SUCCESSORS

This Agreement shall be binding upon and inure to the benefit of each Party to this instrument, and to all employees, spouses, agents, servants, insurers, legatees, attorneys, predecessors, successors, assigns, heirs, executors, affiliates, officers, directors, shareholders, and joint venturers of each Party to this Agreement.

### 8.     REPRESENTATION BY COUNSEL

Each Party warrants that it has been represented and advised by counsel, or has had full opportunity to be independently represented and advised by counsel, with respect to this Agreement and all matters covered by it.  Each Party further warrants that it has read this Agreement and fully understands its content and binding legal effect, and that it is signing this Agreement voluntarily.

### 9.     AGREEMENT NOT TO BE CONSTRUED AGAINST ANY PARTY

Each Party acknowledges that it has participated fully in the drafting and preparation of this Agreement, and hence, no rule of construction may be used to construe this Agreement against any Party by virtue of that Party's role in drafting this Agreement.

### 10.    COVENANTS NOT TO SUE

Plaintiffs represent that, other than the Action and other than in connection with the Prior Judgments, they have not filed any claims, charges, lawsuits, arbitrations, or legal proceedings of any nature against any of the Defendants in any judicial, administrative, arbitral or regulatory forum that remain pending or otherwise unsatisfied.  Plaintiffs, and each of them, further agree that they will not file, commence or prosecute any judicial, administrative, arbitral or regulatory action or proceeding of any nature against any of the Defendants, based upon or arising out of any act, omission, transaction, occurrence, contract, claim or event existing or occurring on or

Initials: _____ _____
_____ _____

before the date the parties execute this Agreement. To the fullest extent permitted by law and in accordance with the terms and conditions contained herein, Plaintiffs waive their rights to file or re-file any actions, administrative proceedings, charges, or other claims against the Defendants, or any one of them. Plaintiffs agree not to induce, encourage and/or assist others to sue or bring a proceeding of any nature against any of the Defendants. Plaintiffs agree to take no action whatsoever to challenge any Patents previously owned by CommUnique or any extensions thereof including, but not limited to any continuations, divisions, continuations-in-part or any foreign applications based in whole or in part on the foregoing, or any other Patent owned or later acquired by IPCO or SIPCO.

Defendants, and each of them, agree that they will not file, commence or prosecute any judicial, administrative, arbitral or regulatory action or proceeding of any nature against any of the Plaintiffs, based upon or arising out of any act, omission, transaction, occurrence, contract, claim or event existing or occurring on or before the date the parties execute this Agreement. To the fullest extent permitted by law and in accordance with the terms and conditions contained herein, Defendants waive their rights to file or re-file any actions, administrative proceedings, charges, or other claims against the Plaintiffs, or any one of them. Defendants agree not to induce, encourage and/or assist others to sue or bring a proceeding of any nature against any of the Plaintiffs.

The Parties further covenant not to challenge or contest in any court or adjudicatory body any provision of this Agreement.

Notwithstanding the foregoing, any of the Parties may bring an action or proceeding to enforce the terms of this Agreement. Any Party seeking to enforce the terms of this Agreement shall be entitled to all remedies at law and in equity and shall be entitled to the recovery of reasonable attorney's fees and costs, upon a successful conclusion of said litigation.

## 11.   CONFIDENTIALITY

The Parties agree that the terms of this Agreement contained herein, will remain strictly confidential and, except as required by law, or by sound accounting practices, will not be disclosed by them under any circumstances other than to their immediate family members, financial or legal advisors, or governmental agencies acting within the scope of their authority. The Parties agree that they will not disclose to any third party (other than to her immediate family members, financial or legal advisors, or governmental agencies acting within the scope of their authority), whether directly or indirectly (e.g., through facial or physical gesture, verification of guesses, or other means), and whether personally or through other persons or entities, the scope or terms of this Agreement or the fact that a large or small monetary amount, or any monetary amount at all, is included in the Agreement.

In addition, should Plaintiffs file any type claim or take any type of legal action in the future against or involving any Defendant or the Patents previously owed by CommUnique or any other Patent owned by IPCO or SIPCO, Defendants shall have the right to disclose the existence and terms of this Agreement as part of that proceeding for any legal purpose.

Initials: _____

### 12. NO ADMISSION OF LIABILITY

Plaintiffs agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by any of the Defendants of any liability or unlawful conduct of any kind. Plaintiffs also agree that nothing in this Agreement shall be used for any purpose other than the limited disclosure for remedy of breach of this Agreement. This Agreement does not create any third party beneficiary rights or create substantive rights in any person or entity other than the Parties.

### 13. NON DISPARAGEMENT

The Parties agree not to make (except if testifying under oath pursuant to a lawful court order or subpoena) or induce others to make any negative, critical, or adverse remarks, whether written or oral, including but not limited to email, text messages, websites, blogs and any other form or method of electronic or other types of communication, concerning any of the other Parties hereto or their officers, directors, employees, publications, products, or services.. If any Party is asked about its relationship with any other Party, it is only permitted to state that there was a dispute, that it was amicably settled, and that they cannot discuss the matter further.

Upon service on Plaintiffs or anyone acting on their behalf of any court order, subpoena or other compulsory process of law requiring or seeking disclosure from any person or entity other than those enumerated in Section 11 hereof, Plaintiffs or their attorneys shall immediately notify the Defendants' attorneys of such service and of the content of any testimony or information to be provided pursuant to such subpoena, order or other legal process and promptly provide a copy of same to Michael V. Coleman at Epstein Becker & Green, PC, 945 East Paces Ferry Road, Suite 2700, Atlanta, Georgia, 30326, Facsimile 404.923.9900, e-mail: mcoleman@ebglaw.com or as otherwise directed in writing.

### 14. COOPERATION

All Parties agree to cooperate fully in connection with any court or administrative proceeding pertaining to the enforcement of the patents previously owned by CommUnique. Such cooperation shall include, without limitation, the execution, acknowledgment and recordation of specific assignments (including, without limitation, any Assignment of Patent Rights to be recorded in foreign countries), oath, declaration and other documents to assist in the protection and enforcement of the patents. To the extent that any party seeks to obtain the assistance of Plaintiff for any matter for which Plaintiffs are not required by law to perform, such assistance shall be subject to satisfactory payment arrangements.

### 15. INDEMNITY

CommUnique hereby agrees to indemnify and hold harmless Plaintiffs from any liability, loss, damage or expense that may arise as a result of Plaintiffs owning a membership interest in CommUnique. CommUnique and Brownrigg further agree to indemnify Plaintiffs from any liability for taxes owed by CommUnique to the Franchise Tax Board and any fees or expenses of the Receiver. Prior to release of any funds to CommUnique or Brownrigg, the Receiver will

Initials: _____ _____

- Page 7 -

completely pay any bill owing to her and will pay all amounts currently claimed due and owing by the Franchise Tax Board. As a condition to receiving any indemnification provided in this Section 15, the Party seeking indemnification shall notify CommUnique and/or Brownrigg, as appropriate, of the event giving rise to the request for indemnification, and provide CommUnique and/or Brownrigg, as appropriate, with the opportunity to provide the defense of any legal or administrative proceeding. In addition, any indemnification obligation afforded by this Section 15 shall be only be triggered if the Plaintiff seeking to be indemnified acted in good faith.

### 16.   HEADINGS

The headings in this Agreement are for the purpose of convenience only and are not meant to modify or affect the terms of the paragraph to which they belong.

### 17.   USAGE

The use of the term "it" or "its" herein shall also mean and include, as may be appropriate by the context, "they," "them," "theirs," "he," "him," "his," "she," "her" or "hers."

### 18.   COUNTERPARTS

This Agreement may be executed in one or more counterparts, each of which, when executed and delivered, shall be an original, and all of which together shall constitute one and the same instrument. This Agreement may also be executed by facsimile or electronic signatures which signatures shall be deemed as effective as original signatures.

### 19.   SEVERABILITY

Should any part of this Agreement be found to be illegal or otherwise rendered unenforceable or ineffectual, the remaining parts of this Agreement shall be deemed severable and shall remain in effect so long as the remaining parts continue to constitute in substance the agreement that the Parties intended to enter.

### 20.   ENTIRE AGREEMENT

This Agreement reflects the complete and entire agreement between the Parties. Except for any agreements executed contemporaneously herewith, any prior oral or written representations and agreements, including prior settlement agreements, by among, between or with the Parties are hereby expressly superseded and merged into this Agreement, thereby rendering them unenforceable.

Initials: _____

- Page 8 -

21.   **EFFECTIVE DATE**

This Agreement shall be effective on the date signed by all Parties and if those signatures are on different dates, the effective date shall be the date upon which the last signatory signed the Agreement.

**THEREFORE**, the Parties to this Agreement now voluntarily and knowingly execute this Agreement.

THOMAS WILSON

DATED: _____          By: _____

WILLIAM G. KARR

DATED: _____          By: _____

EDWIN B. BROWNRIGG

DATED: _1/28/10_                 By: _Edwin B. Brownrigg_

DONNA BROWNRIGG

DATED: _1/28/10_                 By: _Donna L. Chan-Brownrigg_

COMMUNIQUE WIRELESS, LLC

DATED: _____          By: _____
                                 Its: _____

IPCO, LLC

DATED: _____          By: _____
                                 Its: _____

SIPCO, LLC

DATED: _____          By: _____
                                 Its: _____

Approved As To Form:

BOWLES & VERNA

By_____

Attorneys for Thomas W. Wilson and William G. Karr

EPSTEIN, BECKER & GREEN, P.C.

By_____

Attorneys for CommUnique Wireless, LLC, Edwin B. Brownrigg,
Donna Brownrigg, and IPCO, LLC

# EXHIBIT E

## CommUnique Wireless, LLC

February 10, 2010

IPCO, LLC
636 South Central Avenue, Suite 100
Atlanta, Georgia 30354

     **Re:**    **Agreement**

Dear Sir/Madam:

     This letter agreement ("Letter Agreement") is made and entered into as of this 9th day of February, 2010, by and among CommUnique Wireless, LLC ("CommUnique"), a California limited liability company, Dr. Edwin B. Brownrigg, resident of the State of California ("Brownrigg"), and IPCO, LLC, a Georgia limited liability company ("IPCO"), pursuant to which IPCO will make certain payments to Brownrigg and CommUnique in exchange for certain acknowledgments and confirmations, and Brownrigg will provide consulting services to IPCO in exchange for certain payments described herein.

     **WHEREAS,** Brownrigg is the sole manager and is the principal owner of CommUnique owning approximately 65% of its membership interests;

     **WHEREAS,** IPCO entered into an agreement in 2005 with CommUnique (the "2005 Agreement") to purchase all patents and patent applications, and any future continuations or extensions of same, owned by CommUnique, including U.S. Patent Nos. 6,044,062 (the "'062 Patent"), 6,249,516 (the "'516 Patent"), and 7,054,271 (the "'271 Patent");

     **WHEREAS,** the 2005 Agreement was replaced by a new agreement in 2008 to provide for new payment obligations on the part of IPCO (the "2008 Agreement");

     **WHEREAS,** the '062 Patent and the '516 Patent were subjected to a re-examination process by the U.S. Patent and Trademark Office;

     **WHEREAS,** the '516 Patent emerged from re-examination with all claims intact;

     **WHEREAS,** the '062 Patent is still in re-examination as of the date hereof; and;

     **WHEREAS,** IPCO has previously made payments to CommUnique pursuant to the 2008 Agreement.

     **NOW, THEREFORE, FOR AND IN CONSIDERATION** of the mutual promises, covenants and agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

IPCO, LLC
February 10, 2010
Page 2

1.   **CommUnique Payment**.

(a)   IPCO shall pay CommUnique the total additional sum of $200,000.00 (two hundred thousand dollars) to be paid as follows:  to be paid upon the execution hereof to Epstein Becker & Green in satisfaction of outstanding legal fees.

(b)   In consideration for the foregoing payment, Brownrigg and CommUnique hereby agree and confirm as follows:

(i)   any and all amounts due under the 2005 Agreement and the 2008 Agreement (together, the "Agreements") have been paid in full and to the extent any provisions of these Agreements continue to survive, they are hereby superseded and modified by this Letter Agreement;

(ii)   any promissory notes executed in connection with the Agreements have been canceled (the "Notes");

(iii)   the guaranty executed by David Petite in connection with the 2005 Agreement was been canceled by the 2008 Agreement;

(iv)   no further payments are due under the Agreements and/or the Notes; and

(v)   all patents, patent applications and/or patent confirmations of CommUnique have been assigned to IPCO and neither CommUnique nor Brownrigg have any further rights under such patents, including without limitation, the '516 Patent, the '062 Patent and the '271 Patent, or any extensions thereof including, but not limited to any continuations, divisions, continuations-in-part or any foreign applications based in whole or in part on the foregoing.

2.   **Brownrigg Payment**.  IPCO shall pay Brownrigg a fee of $400,000.00 (four hundred thousand dollars) to provide consulting services to IPCO in connection with the re-examination of the '062 Patent, to be paid as follows:  $150,000 paid to Brownrigg on January 5, 2010; $10,000 paid on February 3, 2010, to satisfy certain obligations of Brownrigg; $120,000 upon the execution hereof to be paid to Epstein Becker Green in satisfaction of legal fees; and $120,000 to be paid to Brownrigg directly.

3.   **Additional Agreements**.  The parties hereto agree to execute such additional agreements as may be necessary to effectuate the terms and conditions of this Letter Agreement.

4.   **Governing Law**.  This Letter Agreement will be governed by and construed under the laws of the State of Georgia without giving effect to any applicable conflicts of laws principles.  Should there be any action to enforce the terms of this Letter Agreement, such action shall be brought in a competent court in the State of Georgia.

5. **Confidentiality**. The parties hereto agree that the terms of this Letter Agreement contained herein, will remain strictly confidential and, except as required by law, or by sound accounting practices, will not be disclosed by them under any circumstances other than to their immediate family members, financial or legal advisors, or governmental agencies acting within the scope of their authority. The parties hereto agree that they will not disclose to any third party (other than to their immediate family members, financial or legal advisors, or governmental agencies acting within the scope of their authority), whether directly or indirectly (e.g., through facial or physical gesture, verification of guesses, or other means), and whether personally or through other persons or entities, the scope or terms of this Letter Agreement or the fact that a large or small monetary amount, or any monetary amount at all, is included in this Letter Agreement.

6. **Entire Agreement; Settlement Agreement**. This Letter Agreement contains the entire agreement and understanding concerning the subject matter hereof among the parties hereto, and except for that certain Confidential Settlement Agreement and General Release of All Claims executed contemporaneously herewith (the "Settlement Agreement"), this Letter Agreement expressly supersedes any prior written or oral agreements between the parties. This Letter Agreement may not be modified or amended, except by a writing executed by all parties hereto. No waiver, termination or discharge of this Letter Agreement, or any of the terms or provisions hereof, shall be binding upon either party hereto unless confirmed in writing. This Letter Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns. The parties acknowledge that the Settlement Agreement, including all claims and releases contain therein, remain in full force and effect, and are binding on the parties hereto.

7. **Counterparts**. This Letter Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute the same Letter Agreement. Any signature page of any such counterpart, or any facsimile or electronic mail transmission thereof, may be attached or appended to any other counterpart to complete a fully executed counterpart of this Letter Agreement, and any facsimile or electronic mail transmission of any signature shall be deemed an original and shall bind such party.

8. **Disclaimer of Jurisdiction**. This Letter Agreement is negotiated, executed and performed by IPCO in the State of Georgia, and constitutes a special limited appearance solely for the purpose of addressing the matters herein. It is further the position of IPCO that any obligation in connection with this Letter Agreement must be initiated in the State of Georgia.

9. **Severability**. Should any part of this Letter Agreement be found to be illegal or otherwise rendered unenforceable or ineffectual, the remaining parts of this Letter Agreement shall be deemed severable and shall remain in effect so long as the remaining parts continue to constitute in substance the agreement that the parties hereto intended to enter.

10. **Agreement Not to be Construed Against Any Party**. The parties hereto acknowledge that each has participated fully in the drafting and preparation of this Letter

Agreement, and hence, no rule of construction may be used to construe this Letter Agreement against any party hereto by virtue of that party's role in drafting this Letter Agreement.

If the terms of our understanding have been correctly set forth, please confirm this by signing and returning to us the enclosed copy of this Letter Agreement by no later than 5:00 p.m. PST, _February 16_, 2010.

Respectfully submitted,

CommUnique Wireless, LLC

By: _____
Edwin B. Brownrigg, Managing Member

_____
Edwin Brownrigg

Agreed to as aforesaid,
as of the _9th_ day of _February_, 2010:

IPCO, LLC
By: _Oliver Lee_
Its: _____

1 | Geoffrey M. Ezgar (State Bar No. 184243)
gezgar@kslaw.com
2 | King & Spalding LLP
333 Twin Dolphin Drive
3 | Suite 400
Redwood Shores, CA 94065
4 | Telephone:  +1 650 590 0700
Facsimile:   +1 650 590 1900
5
*Of Counsel:*
6
Jeffrey S. Cashdan
7 | Bethany M. Rezek
King & Spalding LLP
8 | 1180 Peachtree Street, N.E.
Atlanta, Georgia  30309
9 | Telephone: (404) 572-4600
Facsimile: (404) 572-5139
10
Attorneys for Defendants IPCO, LLC and SIPCO, LLC
11

12 | SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF SACRAMENTO
13

14 | EDWIN B. BROWNRIGG, an individual;
15 | COMMUNIQUE WIRELESS, LLC, a
California limited liability company,
16

17 |                  Plaintiffs,

             v.
18

19 | IPCO, LLC dba INTUSIQ, LLC, a Georgia
limited liability company; SIPCO, LLC, a
20 | Georgia limited liability company; and DOES 1
through 25, inclusive,
21

22 |                  Defendants.

23

Case No.  34-2012-00136764

**CERTIFICATE OF SERVICE OF
DEFENDANTS' NOTICE OF FILING OF
REMOVAL TO THE UNITED STATES
DISTRICT COURT FOR THE EASTERN
DISTRICT OF CALIFORNIA**

24 |     I, the undersigned, hereby certify that I am a citizen of the United States, over the age of

25 | 18, and am not a party to the within action.  I am employed in the City of Redwood City, County

26 | of San Mateo, and my business address is 333 Twin Dolphin Drive, Suite 400, Redwood Shores,

27 | CA.  I am readily familiar with the firm's practice of collection and processing of documentation

28 | for mailing with the United States Postal Service.  On the date listed below, following ordinary

POS |                                                          Case No. _____

1  business practice, I served the following document(s):

2  **DEFENDANTS' NOTICE OF FILING OF REMOVAL TO THE UNITED STATES**

3  **DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA**

4  on the parties in this action, by enclosing true and correct copies therein in sealed envelope(s),

5  addressed as follows:

6  Justin H. Sanders
   SANDERS ROBERTS LLP
7  355 South Grand Avenue
   Suite 2450
8  Los Angeles, California  90071

9

10  ( )  By U.S. Mail:  I caused to be placed, on the date shown below, at my place of
        business, a true copy thereof, enclosed in a sealed envelope, with postage fully
11      pre-paid, for collection and mailing with the United States Postal Service where it
        would be deposited with the United States Postal Service that same day in the
12      ordinary course of business.

13  ( )  By Facsimile:  By transmitting via facsimile the document(s) listed above to the
        fax number(s) set forth below on this date before 5:00 p.m.
14

15  (X)  By Overnight Delivery:  I caused such envelope to be delivered to the office of
        the addressee(s) by overnight delivery via Federal Express/United Parcel Service
16      or by a similar overnight delivery service.

17  ( )  By Personal Service:  By causing a true copy thereof to be personally delivered by
        hand on _____, to the offices of the addressee(s).
18

19  ( )  By E-Mail:  By causing a true copy thereof to be emailed to the addressees at the
        e-mail addresses indicated.
20

21      I declare under penalty of perjury under the laws of the State of California, that the

22  foregoing is true and correct.

23  Date: March 29, 2013

24

25                                                        Janice Souza

26

27

28

                                        2

POS                                                            Case No. 34-2012-00136764